UNITED STATES of America, Plaintiff,

v.

George WHITNEY, Defendant.

No. CIV–83–1257T.

United States District Court, W.D. New York.

Feb. 11, 1985.

---

Salvatore R. Martoche, U.S. Atty., Buffalo, N.Y. (Frank P. Geraci, Jr., Asst. U.S. Atty., Rochester, N.Y., of counsel), for plaintiff.

Solin, Polito & Anderson, Rochester, N.Y. (Richard F. Anderson, Rochester, N.Y., of counsel), for defendant.

## MEMORANDUM DECISION and ORDER

TELESCA, District Judge.

### BACKGROUND

In this action, the United States seeks to collect from a veteran, defendant George Whitney, a deficiency which arose out of the foreclosure of a mortgage by Community Savings Bank on property originally purchased by Whitney. The mortgage was guaranteed by the Veterans' Administration. As a condition of securing the mortgage, Whitney agreed to remain personally liable on the mortgage debt, even though there might be a subsequent transfer of the property and assumption of the mortgage by others.

Four years after Whitney sold the property, the last purchaser of the property defaulted, and Community Savings Bank foreclosed. There is no dispute that the veteran Whitney was not a party to the foreclosure proceeding brought by Community. The property was purchased by the V.A., which later resold it. The sale was insufficient to satisfy the unpaid balance of the mortgage, and the V.A. reimbursed Community for the deficiency.

The United States now seeks summary judgment against Whitney for the deficiency incurred (approximately $4,000.00). Defendant has cross-moved for summary judgment, claiming that he was released from liability since he was never made a party to the original foreclosure proceeding and hence denied due process of law.

## DISCUSSION

### I.

It is undisputed that Whitney was never made a party to the mortgage foreclosure proceeding. In a letter dated June 6, 1978, James Wolfe, Loan Service Representative for the V.A., acknowledged that defendant and his wife "were not listed in the summons and complaint by bank attorneys". Plaintiff does not deny that no efforts were made, either by the bank or the Government, to notify Whitney of the default of the mortgage or the subsequent foreclosure. Rather, the Government has taken the position that there is no duty on either the V.A. or the mortgagee to notify the veteran liable for a mortgage which is being foreclosed. That position, which is contested by Whitney, must be addressed with respect to both New York State law and Federal constitutional law.

### A. *New York Mortgage Procedure*

### 1. *The applicable law*

■ Under New York law, as discussed more fully below, a person responsible for the payment of a debt secured by a mortgage is entitled to personal service of notice of the mortgage foreclosure. Before turning to the applicable provisions of New York law, the threshold question to be resolved is whether the notice requirements under state law are applicable to the foreclosure of a mortgage guaranteed by the Veterans' Administration, and otherwise generally governed by federal regulations. (38 C.F.R. Section 36.4300 *et seq.*)

In *United States v. Shimer*, 367 U.S. 374, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961), the United States brought an action against a veteran for reimbursement of a deficiency incurred after foreclosure of a mortgage guaranteed by the V.A. The veteran argued that, under the Pennsylvania Deficiency Judgment Act, he was discharged from any obligation by the failure of the mortgagee to bring a proceeding to obtain a court determination of the fair market value of the mortgaged property within six months of the foreclosure sale. The Supreme Court disagreed, holding that the foreclosure of a mortgage guaranteed by the V.A. is governed by federal regulations, and is not subject to a state law requiring judicial appraisal of the mortgaged property. "The Regulations promulgated by the Veterans' Administration make clear that they were intended to create a uniform system for determining the Administration's obligation as guarantor, which in its operation would displace state law." *Id.*, at 377, 81 S.Ct. at 1557.

In subsequent cases involving the foreclosure of mortgages guaranteed by the V.A., several circuit courts have summarily rejected the application of state laws governing mortgage foreclosure, citing *Shimer* for the proposition that V.A. regulations "displace state law"—apparently proceeding on the unwarranted assumption that the federal regulations preempt state law altogether in this area. *See, e.g., Mortgage Associates, Inc. v. Cleland*, 653 F.2d 1144, 1147 (7th Cir.1981)[1]; *United States v. Rossi*, 342 F.2d 505 (9th Cir.1965).[2] The Fifth

---

**1.** The Seventh Circuit Court of Appeals cited *Shimer* for the conclusion that "defendant cannot resort to Illinois law" to support an argument that its guarantee obligation had been extinguished. *Mortgage Associates, supra,* 653 F.2d at 1147.

Nevertheless, the same court inexplicably adverted to Illinois law (albeit only in dictum) in *Mortgage Associates, Inc. v. Cleland*, 651 F.2d 476 (7th Cir.1981), which was argued the same day before the same panel but involved a different veteran. Without any discussion of the preemptive effect of the V.A. regulations, the court noted that "failure to give the [veteran] notice of the August 16, 1971, motion to set aside the prior foreclosure sale and order may have been

a violation of state procedural rules. *See* Illinois Supreme Court Rule 105(a); Ill.Ann.Stat. ch. 110A, Section 105(a) (Smith-Hurd 1968)." *Id.,* at 479.

**2.** *United States v. Rossi*, 342 F.2d 505 (9th Cir. 1965), like the instant case, involved a state law which required notice of a foreclosure to the original mortgagor. Relying on *Shimer* for the conclusion that V.A. regulations "displace state law in their operation", the court held that the notice provisions of California law were inapplicable. *Id.* at 506. The court offered no analysis of whether those notice requirements posed any conflict with federal law, evidently proceeding on the assumption that federal preemption of this field was complete. For the reasons stated

Circuit also adopted and relied upon such an interpretation of *Shimer* in *United States v. Wells*, 403 F.2d 596, 597–8 (5th Cir.1968) in concluding that "The national loan program of the Veterans['] Administration cannot be subjected to the vagaries of the various state laws which might otherwise control all *or some* phases of the loan program." (emphasis added). For the following reasons, I respectfully disagree, and conclude that a more discriminating analysis of federal preemption is demanded by *Shimer*.

■ Although the supremacy clause of the United States Constitution, Article VI, Clause 2, reserves a superior status for federal law, it is settled that the preemptive effect of federal statutes and regulations may be either partial or complete in any given area of law. *Fidelity Federal Savings and Loan Association v. de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). "Congress' intent to supersede state law altogether", *Id.*, may be inferred, for example, in a field of law "in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or where "[t]he scheme of federal regulation may be so pervasive as to make reasonable the infer-

ence that Congress left no room for the States to supplement it". *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Neither inference is permissible in the case of V.A. regulations governing mortgage foreclosure, however, and neither inference has ever been drawn by the Supreme Court.

Although the court held in *Shimer* that V.A. regulations "displace state law" in the field of mortgage foreclosure, the court never implied that state regulation of the area had been "completely displaced".[3] Indeed, the opposite conclusion is compelled by the V.A. regulations themselves, which explicitly contemplate that at least some aspects of foreclosure procedure will continue to be governed by state and local law.[4] On the contrary, the Supreme Court's holding in *Shimer* was based on its conclusion that the rival schemes under Pennsylvania law and federal regulations for calculating the value of mortgaged property were "intended to remedy the same abuses" and therefore "inconsistent". *Shimer*, 367 U.S. at 380, 81 S.Ct. at 1559. The court concluded that the V.A. regulations were, "to this extent, meant to displace *inconsistent* state law". *Id.*, at 381, 81 S.Ct. at 1559 (emphasis added). As the Court of Appeals from this Circuit has cor-

below, I cannot accept that assumption, nor the decision ultimately reached by the court in *Rossi*.

3. With respect to the narrow issue of the proper method for calculating the credits accruing from the proceeds of a foreclosure sale, the court held in *Shimer* that "the method of determining these credits is also specified in the Regulations ... in such great detail that there can be little doubt of an administrative intent that such method should provide the exclusive procedure.... We think that the Servicemen's Readjustment Act authorized the Veterans' Administrator to displace state law by establishing these exclusive procedures". *Shimer, supra*, 367 U.S. at 379, 381, 81 S.Ct. at 1558, 1559. Yet it is clear that the court was referring here only to the "procedure" for calculating the amount of the proceeds of a foreclosure sale to be applied in reduction of the outstanding debt—not the *entire area* of law governing the "procedure" for foreclosing a mortgage.

4. *See*, for example, 38 C.F.R. Section 36.-4315(b)(2)(vii), which provides that a mortga-

gor's partial payment may be returned within ten (10) days if "foreclosure has been commenced by the taking of the first action required for foreclosure under local law".

38 C.F.R. Section 36.4320(d) specifies the procedure for sale of security in circumstances where "a minimum bid is required under applicable State law".

After the V.A. makes payment under its guarantee and receives an instrument from the bank acknowledging that payment, 38 C.F.R. Section 36.4323(c) requires the V.A. to file the instrument for record "in the office of the recorder of deeds, or other appropriate office of the proper county, town or State, in accordance with the applicable State law". The regulation goes on to provide that: "The filing or failure to file such instrument for record shall have the legal results prescribed by the applicable law of the State where the real or personal property is situated, with respect to filing or failure to so file mortgages and other lien instruments and assignments thereof."

rectly observed, the *Shimer* court "refused to apply the [Pennsylvania] statute to the Veterans' Administration on the ground that the Pennsylvania scheme was inconsistent with Veterans' Administration regulations". *United States v. Merrick Sponsor Corp.*, 421 F.2d 1076, 1079 n. 1 (2d Cir.1970).[5]

For the foregoing reasons, I conclude that the V.A. regulations governing mortgage foreclosure were not intended to *completely* displace all state laws in that field. As *Shimer* and its legitimate progeny have recognized, "where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law". *Fidelity Federal Savings and Loan Association, supra*, 458 U.S., at 153, 102 S.Ct., at 3022. Next to be resolved, therefore, is whether such a conflict exists between the V.A. regulations and a state law requiring notice of a foreclosure to the original veteran mortgagor. As the Supreme Court has stated, "[s]uch a conflict arises when compliance with both federal and state regulations is a physical impossibility, or when state law stands as an ob-

stacle to the accomplishment and execution of the full purposes and objectives of Congress". *Id.* (citations and quotation marks omitted). These two criteria must be considered individually.

It is clear that there would be no "physical impossibility" in complying with both the notice provisions of the V.A. regulations and the New York law requiring notice to the mortgagor. The pertinent federal statutes and regulations outline the notice which must be given to the Veterans' Administration concerning guaranteed loans to veterans,[6] but they are completely silent as to whether the veteran himself is to receive any notice of the foreclosure, or how such notice is to be given. Consequently, there would be no inherent incompatibility in providing notice to the mortgagor, as required by New York law, while complying fully in every detail with all of the federal regulations concerning V.A. home loans.

Even where state and federal law are logically compatible, the state law might still be "inconsistent", and therefore preempted, where it poses an obstacle to

---

**5.** In *Merrick,* the Second Circuit held that the foreclosure of a mortgage insured and held by the Federal Housing Administration was not subject to a provision of New York law which requires that a motion for deficiency judgment be made within ninety (90) days after delivery of the deed following the foreclosure sale.

In reaching that decision, however, the Court of Appeals never relied on any suggestion that federal law had completely preempted state regulation in the area of federally insured mortgages. The ninety day statute of limitations imposed under New York law, like the six (6) month limitation period of Pennsylvania law rejected by the Supreme Court in *Shimer,* was clearly "inconsistent" with federal regulations, *Merrick, supra,* at n. 1, for the same reasons. This point was later made more clear by the court in *United States v. O'Connell,* 496 F.2d 1329 (2d Cir.1974), in which the Government foreclosed on a mortgage which had been assigned to the Federal Housing Administration and acquired the property. The question presented was whether the property acquired by the United States through its foreclosure would include certain easements. While acknowledging that "federal law governs F.H.A. foreclosure proceedings" after *U.S. v. Merrick,* the Court of Appeals nevertheless held that New York State

law would govern this particular question, in part because "[t]here is no suggestion here ... that state law is *hostile* to the federal scheme". *U.S. v. O'Connell, supra,* 496 F.2d at 1332 (emphasis added).

**6.** Upon default by a veteran on his mortgage, the private lender must notify the V.A. within forty-five (45) days, 38 C.F.R. § 36.4315, and if the lender intends to foreclose, he may not begin legal proceedings until thirty (30) days after delivering a notice of his intent to the V.A. 38 U.S.C. § 1816(a); 38 C.F.R. § 36.4317. If the lender repossesses any personal property, he must give notice of such repossession to the V.A. within ten (10) days thereafter. 38 C.F.R. § 36.4317(b). The lender must also provide notice to the V.A. of any legal or equitable proceeding to which the lender is a party, involving the guaranteed or insured indebtedness or involving title to the security. 38 C.F.R. § 36.-4319(a). The form and manner of the notice required under each of these sections is laid out in 38 C.F.R. § 36.4332.

None of the above sections speaks in any way to the existence of any duty to notify *the veteran* responsible for the mortgage. Conversely, however, no regulation expressly indicates that notice to the veteran is unnecessary.

the accomplishment of the full purposes and objectives of the federal scheme. *Fidelity Federal Savings, supra,* 458 U.S., at 153, 102 S.Ct., at 3022. Indeed, this was precisely the sort of "inconsistency" found by the Supreme Court in *Shimer* between Pennsylvania and federal law, after noting that there was (at least in theory) no logical inconsistency between the two. *Shimer, supra,* 367 U.S. at 382–83, 81 S.Ct. at 1560. The court reasoned that federal statutes and regulations in this area of law, broadly stated, evidenced two congressional objectives: (1) "to enable veterans to obtain loans and to obtain them with the least risk of loss upon foreclosure, to both veteran and the Veterans' Administration as guarantor of the veteran's indebtedness," and (2) "to induce prospective mortgagee-creditors to provide 100% financing for a veteran's home." *Id.,* at 383, 81 S.Ct. at 1560. With respect to the proper method of calculating the value of foreclosed property, the Pennsylvania and federal schemes presented different, and to that extent "inconsistent", attempts at balancing these two objectives. The Supreme Court held that the V.A.'s choice "represents a reasonable accommodation of [these] conflicting policies," since it was one which "the agency could allowably view as a more effective reconciliation of these twofold ends than might be accomplished by a complete or partial adoption of the law of a State such as Pennsylvania". *Id.*

More specifically, the Supreme Court recognized that a partial incorporation of the Pennsylvania Deficiency Judgment Act might have furthered at least the former goal of protecting the veteran's interests. But the court could not conclude with any confidence that such an adoption of Pennsylvania law would not unacceptably jeopardize the latter objective of persuading creditors to finance a veteran's home without a downpayment.[7] Nor could the court conclude that the V.A. had "unreasonably sacrificed ... the veteran's protection" in striking the balance that it had between the

two objectives of the Act. *Id.,* at 385, 81 S.Ct., at 1561. Accordingly, the court refused to disturb the V.A.'s discretionary calculation of the proper balance of the protection to be given to the interests of each party.

In the context of the present case, however, neither conclusion would be difficult to draw with confidence. It could not be seriously supposed that the simple expedient of requiring foreclosure notice to the veteran would impose any hardship upon the lender or the V.A., or would ultimately provide even the slightest disincentive for prospective mortgagee creditors to accept a guaranteed loan in financing a veteran's home. Under the present regulations, the bank's notice of intention to foreclose to the V.A. "must plainly identify the case by setting forth the name of the original veteran obligor and the file number assigned to the case by the Administrator, if available, or otherwise the name and serial number of the veteran". 38 C.F.R. Section 36.4332. Since the bank is already required under federal law to notify the V.A. of the identity of the veteran obligor, the additional burden of notifying the veteran would be minimal at best. Furthermore, putting the veteran on notice of the foreclosure proceeding (unlike the Pennsylvania requirement for judicial appraisal rejected by the Supreme Court in *Shimer*) could not possibly have the effect of ultimately decreasing the bank's final recovery under the mortgage and bond. Indeed, placing the veteran on notice can only increase the likelihood that the default will be cured or that a greater amount will eventually be paid for the property at the foreclosure sale.

When all of the foregoing factors are weighed against the great risk faced by the veteran who is denied notice, I can safely conclude, as the Supreme Court could not in *Shimer,* that the V.A.'s regulations have "unreasonably sacrificed ... the

---

7. In the words of the court, "We cannot say that a Pennsylvania lender would not prefer a down payment to a guaranteed loan in the same

amount if the Pennsylvania Deficiency Judgment Act were applicable". *Shimer,* 367 U.S. at 385, 81 S.Ct. at 1561.

veteran's protection", *Id.* at 385, 81 S.Ct. at 1561, in failing to insure that such notice is provided. Accordingly, under the standards laid down by the Supreme Court in *Shimer* for preemption analysis, I conclude that the provision of New York law requiring notice to the mortgagor (in this case, the veteran) is in no way inconsistent with the protections granted to the lender under V.A. regulations, and therefore is not displaced by the otherwise extensive body of federal law in this field.[8]

### 2. *The Notice Requirements of New York Law*

It is now commonly understood that the holder of a bond and mortgage has a choice of two remedies: He may proceed at law to bring an action on the debt as evidenced by the note (or bond) or he may proceed at equity by bringing an action to foreclose the mortgage. The note represents the primary personal obligation of the mortgagor while the mortgage is merely the security for that obligation. *Copp v. Sands Point Marina,* 17 N.Y.2d 291, 293, 270 N.Y.S.2d 599, 217 N.E.2d 654 (1966); *Seamen's Bank for Savings in the City of New York v. Smadbeck,* 293 N.Y. 91, 95, 56 N.E.2d 46 (1944). Under Section 1301 of the Real Property Actions and Proceedings Law, the mortgagee must make an election as to which remedy he will pursue and cannot prosecute two actions concurrently. *French v. French,* 107 A.D. 107, 109, 94 N.Y.S. 1026, *app. dsmd.* 185 N.Y. 532, 77 N.E. 1187 (1906). Section 1301 of the Real Property Actions and Proceedings Law prevents a mortgagee of real property from seeking to enforce rights upon default by pursuing a legal remedy and an equitable remedy at the same time.

Foreclosure is an equitable proceeding devised to extinguish the equity of redemption—an important, exclusive right held by the mortgagor. *Cornish v. Moulton,* 138 N.Y. 133, 33 N.E. 842 (1893). It

has long been the public policy of New York State "to give the court in which the foreclosure of the mortgage was had, full jurisdiction over the whole subject ... and to allow one court to dispose of the whole subject". This policy "is applicable to every case where the owner of the mortgage has any personal security for the mortgage debt, whether it be the bond of the mortgagor or the covenant of another person" and its purpose is "to confine all the proceedings to recover a mortgage debt to one court". *Scofield v. Doscher,* 72 N.Y. 491, 493–94 (1878); *State Bank of Albany v. Amak Enterprises, Inc.,* 77 Misc.2d 340, 342, 353 N.Y.S.2d 857 (1974). As one court recently explained:

R.P.A.P.L. 1311 codifies the equitable principle that persons holding title to the premises or acquiring any right to or lien on the property subsequent to the mortgage should be made defendants in the foreclosure action. The rationale for joinder of these interests derives from the underlying objective of foreclosure actions—to extinguish the rights of redemption of all those who have a subordinate interest in the property and to vest complete title in the purchaser at the judicial sale. Notice to interested persons provides them with the opportunity to redeem prior to sale, to bid at the sale (which conceivably might increase the sale price), and to protect their interests in a possible surplus.

*Polish National Alliance of Brooklyn, U.S.A., v. White Eagle Hall Company, Inc.,* 98 A.D.2d 400, 403–4, 470 N.Y.S.2d 642 (2d Dept.1983) (citations omitted). Consequently, the absence of a necessary party to a foreclosure action leaves that party's rights unaffected by the judgment of foreclosure and sale, and renders the foreclosure sale void as to that party. *Id.,* at 406, 470 N.Y.S.2d 642.

---

**8.** Although I conclude that the notice provisions of New York law are also applicable against the V.A., this conclusion is especially free from doubt with respect to the veteran's rights against the private lender. As the Supreme Court stressed in *Shimer,* 367 U.S. at 385, 81 S.Ct. at 1561, "the debtor-veteran who may be forced to reimburse the Administrator ... retains all the benefits of state law as against the mortgagee".

In keeping with these policies, New York law provides that a mortgagee may recover from the mortgagor the debt remaining unsatisfied after foreclosure, *but only* if the person liable for the payment of the debt secured by the mortgage was made a defendant in the action, and appeared or was personally served with the summons in the action. Section 1371(1) N.Y. Real Property Actions and Proceedings Law (RPAPL).[9] Therefore, an action to foreclose a mortgage does not automatically result in a money judgment against a person who was not made a party to the proceeding. A mortgagee waives its rights against the mortgagor on his bond by electing to foreclose without his appearance or service upon him. *Federal National Mortgage Association v. Connelly*, 84 A.D.2d 805, 444 N.Y.S.2d 147 (2d Dept.1981).

Therefore, it is clear that Community Savings Bank (the foreclosing mortgagee) is not entitled to a deficiency judgment against Whitney since it chose not to make Whitney a party to the foreclosure proceeding, but instead, elected to proceed against the property only and look to the statutory guarantee by the Government for the payment of any deficiency incurred as the result of the foreclosure sale. The V.A. then proceeded directly against the original mortgagor (Whitney) for satisfaction of the deficiency although he was never a party to the original mortgage foreclosure proceeding. Therefore by being denied notice of the default, the veteran was deprived of (1) an opportunity to exercise his equity of redemption, and (2) the chance, as a party to the lawsuit and a participant in the sale of the property, to make certain the price was fair and reasonable under the circumstances. In short, he is called upon to pay a deficiency over which he had no control, and of which he had no prior notice, all in clear violation of New York law.

### B. *The Due Process Clause*

Quite apart from any consideration of New York law, the failure to place Whitney on notice of the mortgage foreclosure raises concerns of constitutional magnitude. These concerns were noted, but left unresolved, in *Mortgage Associates, Inc. v. Cleland*, 651 F.2d 476 (7th Cir.1981), where the holder of a mortgage guaranteed by the V.A. brought foreclosure proceedings, and later moved to set aside the foreclosure sale without providing notice to the veteran. The Court of Appeals observed in dictum that "[f]ailure to give the [veteran and his wife] notice raises serious due process questions in any attempt to saddle them with an increased deficiency". *Id.*, at 479. The court noted without deciding "the constitutional question of due process as applied to proceedings of this type which ultimately can result in a substantial deficiency, as contrasted to a proceeding where a judgment is obtained after personal service is secured". *Id.*

In *Mullane v. Central Hanover Bank and Trust Company*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950), the Supreme Court recognized that prior to an action which will affect a constitutionally protected interest in life, liberty or property, a state must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections". Invoking this "elementary and fundamental requirement of due process", *Id.*, the court held that published notice of an action to settle the accounts of a common trust fund was not sufficient to inform beneficiaries of the

---

**9.** This notice requirement of Section 1371(1) must be carefully distinguished from the distinct provisions of 1371(2), which impose a ninety (90) day limit on the period in which to bring a motion for deficiency judgment. The latter requirement is arguably "inconsistent" with the federal regulations, and was held to be inapplicable to the foreclosure of a F.H.A. mortgage in *United State v. Merrick Sponsor Corp.*,

421 F.2d 1076 (2d Cir.1970). But the notice requirement of Section 1371(1) was not even cited, much less considered, by the Second Circuit in that opinion. New York R.P.A.P.L. 1371(1) is not among the "inconsistent state law" displaced by the V.A. regulations, and *Merrick* and its progeny do not compel a different conclusion. *See* Footnote 5, *infra*.

trust whose names and addresses were known. This principle was extended by the United States Supreme Court to require notice to a mortgagee in an *in rem* tax foreclosure proceeding brought under state law. *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). In *Mennonite*, the court held that an Indiana tax foreclosure statute which failed to provide for personal notice to mortgagees violated the Due Process Clause. "Since a mortgagee clearly has a legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending tax sale." *Id.*, 103 S.Ct. at 2711.

This case is controlled by the analysis in *Mullane* and *Mennonite*. Like the mortgagee of property subject to a tax sale in *Mennonite*, it is clear that a mortgagor "possesses a substantial property interest that is significantly affected by a [foreclosure] sale". *Mennonite, supra*, 103 S.Ct. at 2711. In the absence of meaningful notice, he is denied the opportunity to exercise his equity of redemption or to bid in on the proceeding disposing of the property. Since he clearly has a legally protected property interest in the outcome of the foreclosure, the mortgagor is constitutionally entitled to notice reasonably calculated to apprise him of its pendency.[10] *Id.*

The means employed to notify the mortgagor "must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it". *Mullane, supra*, 339 U.S. at 315, 70 S.Ct. at 657. Of course, the form of notice required by the Constitution will depend in part upon the ease with which the individual can be identified and located. "Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable." *Mennonite, supra*, 103 S.Ct. at 2712.

In the present case, there is no dispute that the name and address of the veteran could have been easily ascertained prior to the foreclosure sale. Before the foreclosure proceedings could begin, the bank was required under federal regulations to notify the Veterans' Administration of "the name of the original veteran obligor and the file number assigned to the case by the Administrator, if available, or otherwise the name and serial number of the veteran". 38 C.F.R. Section 36.4332. Although Whitney no longer resided at the mortgaged property at the time of foreclosure, he cogently points out that the V.A.

---

**10.** In *Federal Deposit Insurance Corporation v. Morrison*, 747 F.2d 610 (11th Cir.1984), the Eleventh Circuit Court of Appeals recently held that a mortgagor's equity of redemption constitutes "property" protected by the Due Process Clause. Nevertheless, the court held that a mortgagor was not "deprived" of any property rights, and therefore was not entitled to due process of law, because his equity of redemption was terminated at a foreclosure proceeding which met the procedural requirements imposed by state law. Since the mortgagor's property interests had been created by the State of Alabama, the court reasoned, those rights were necessarily subject to the Alabama rule that a mortgagee need only provide notice by *publication* of a foreclosure sale through which the mortgagor's equity of redemption would be automatically terminated.

That conclusion is not compelled in the present case, because New York law differs from Alabama law.

In New York, unlike Alabama, a person liable for the payment of a debt secured by a mortgage may not be held liable for the deficiency remaining after foreclosure unless he is made a defendant in the foreclosure action, and has appeared or has been *personally* served with the summons. New York Real Property Actions and Proceedings Law Section 1371(1).

Also, it must be noted that the reasoning adopted by the Court of Appeals in *Morrison* is inconsistent with the result reached by the Supreme Court in *Mennonite*. Like the mortgagor in *Morrison*, the mortgagee in *Mennonite* held a substantial property right which was created by state law and subsequently nullified by a judicial sale conducted in accordance with state law. Nevertheless, the Supreme Court held that the termination of the mortgagee's lien without actual notice was a violation of the Due Process Clause, even though the tax sale procedures struck down by the Court were authorized by the same state laws which had created the lien.

had no difficulty locating his present address when it sought reimbursement for the deficiency it had paid under its guarantee.

I therefore conclude that the failure to give adequate notice to defendant of the mortgage foreclosure proceeding deprived him of due process of law, in violation of his rights under both the Fifth and the Fourteenth Amendments.[11]

## II.

Having established that the defendant was denied his right to personal notice of the foreclosure sale, a right guaranteed him under both New York State law and the federal Constitution, the only question remaining for decision is whether he can now be held liable to the V.A. in this action for the deficiency arising out of that foreclosure. The Government contends that defendant is liable under the terms of his guarantee agreement with the Veterans Administration, independently of his obligations for repayment of the loan to the lending institution which granted the mortgage.

When the V.A. is required to make payments on a guaranteed home loan in default, it may seek reimbursement from the veteran under its guarantee either on a theory of subrogation to the mortgagee's rights, or on an independent right to indemnity. *Shimer, supra,* 367 U.S. at 386, 81 S.Ct. at 1562; 38 C.F.R. Section 36.4323. The Government has failed to specify which theory of recovery it relies on in the present action, so both possibilities must be evaluated independently.

38 U.S.C. Section 1816(1)(a) provides that in the event of default in the payment to the holder (bank) of any guaranteed loan, the Veterans' Administration shall pay to the holder the guarantee not in excess of the pro rata portion of the amount originally guaranteed, and "shall be subrogated to the rights of the holder of the obligation to the extent of the amount paid on the guaranty".[12] To the extent

---

**11.** Although the Government has not contested the presence of "state action" in the present case sufficient to implicate the due process protections of the Constitution, the question warrants brief comment after the recent conclusion by one court that "foreclosure by a private lender of a mortgage in a federal mortgage guaranty program does not involve federal action sufficient to invoke the due process clause of the Fifth Amendment". *Rank v. Nimmo,* 677 F.2d 692, 702 (9th Cir.), *cert. denied,* 459 U.S. 907, 103 S.Ct. 210, 74 L.Ed.2d 168 (1982).

In *Rank,* the Court of Appeals held that the acts and omissions of a private lender do not constitute "state action" merely because the bank is heavily regulated under law. The court reasoned that: "Although the private lender was subject to extensive federal regulation under the Federal Home Loan Guarantee Program, this, alone, in our view, is insufficient to convert the actions of the private lender into governmental action." *Id.* There was no other conceivable element of state action in *Rank,* since the property had been sold at a non-judicial foreclosure sale pursuant to California law. *Id.,* 696. A non-judicial foreclosure by a private party does not constitute state action for due process purposes. *Charmicor v. Deaner,* 572 F.2d 694 (9th Cir.1978).

In the present case, on the other hand, the mortgage held by Community Savings Bank was foreclosed through judicial proceedings in the courts of New York State. That factor, which was not present in *Rank,* presents an element of state action sufficient to trigger the protections of the Due Process Clause of the Fourteenth Amendment. As both *Mullane* and *Mennonite* recognized, "[t]he action of state courts in imposing penalties or depriving parties of other substantive rights without providing adequate notice and opportunity to defend, has, of course, long been regarded as a denial of the due process of law guaranteed by the Fourteenth Amendment". *Shelley v. Kraemer,* 334 U.S. 1, 16, 68 S.Ct. 836, 843, 92 L.Ed. 1161 (1948) (citations omitted).

Of course, to the extent that the Veterans' Administration participated in the denial of defendant's rights to due process of law and adequate notice, through the omissions of its regulations and its failure to notify him personally of the foreclosure sale where it bought the property, there is no question that the acts and omissions of this federal agency constitute "state action" sufficient to implicate the protections of the Due Process Clause of the Fifth Amendment.

**12.** On July 18, 1984, after this action was commenced, but before these motions were argued, 38 U.S.C. Section 1816 was substantially revised. Public Laws 98–369, Title V, Section 2512(a). The amendments took effect on October 1, 1984, and therefore do not govern this case. The language of the statute with respect to subrogation, which is quoted in the text of this opinion

that the Government is subrogated to the rights of the bank, of course, the Government would not acquire any greater rights against the veteran than the bank would have enjoyed itself. Since the bank did not proceed against the veteran or make him a party to the proceeding with personal service of notice, the bank could not hold the veteran accountable for the resulting deficiency. This conclusion is independently compelled by both the New York Real Property Actions and Proceedings law and by the United States Constitution. Consequently, the Veterans' Administration cannot seek recovery of the deficiency from the veteran on a theory of subrogation, since the lender itself abandoned such rights against the veteran.

Although 38 U.S.C. § 1816(1)(a) expressly speaks only of the Administrator's right of subrogation, it is settled "that the statute affords an independent right of indemnity to the Veterans' Administration", *Shimer, supra*, 367 U.S. at 387, 81 S.Ct. at 1562, which exposes the veteran to "direct liability for amounts properly paid on his behalf by the Veterans' Administration". *Id.*, at 387, 81 S.Ct. at 1562. This right of indemnity is reflected in the V.A. regulations, which hold the veteran responsible for "[a]ny amounts paid by the Administrator on account of the liabilities of any veteran", 38 C.F.R. § 36.4323(e), and in the guarantee agreement signed by Whitney on November 4, 1968, which stated that he would be obliged "to repay any guaranty claim which the V.A. may be required to pay your lender on account of default in your loan payments".

■ It is clear that the Government's independent right to indemnity from the veteran is not extinguished merely because the bank could not have collected the deficiency directly from him. The guarantor's rights of indemnity against the creditor are not defeated "merely because of a failure of the lender's rights against the principal". *Id.*, at 387, 81 S.Ct., at 1562. Nevertheless, the V.A.'s right to indemnity is defeated in this situation, because of the Government's intimate complicity in the violation of defendant's statutory and constitutional rights. In bringing the foreclosure proceeding, the bank was only complying with the V.A.'s own regulations, which conspicuously fail to acknowledge or respect the veteran's constitutionally guaranteed right to notice.

Since federal law requires the lender to deliver notice of foreclosure proceedings, along with the name of the original veteran obligor, to the V.A. thirty (30) days in advance, the Government could have easily insured that the veteran had been sent "notice by mail or other means as certain to ensure actual notice". *Mennonite, supra*, 103 S.Ct. at 2712. Since the Government failed to do so, it cannot now hold the veteran liable to pay a deficiency arising out of the foreclosure proceeding without having any prior notice of that proceeding. Any contrary holding would permit the Government to circumvent and undermine the veteran's statutory and constitutional rights to prior notice of the foreclosure proceeding.

The Government correctly observes that defendant never requested a release from the V.A. for his liability under the guarantee, pursuant to 38 U.S.C. § 1817, and that he was not relieved of liability by the mere act of transferring his interest in the property. On November 4, 1968, Whitney signed a borrower's statement of liability which reads in part as follows: "The fact that you dispose of your property after the loan has been made will not relieve you of liability from making these payments." The statement goes on to explain that even though the property is subsequently sold and someone else in the chain of title fails to make the payments, the veteran will still be responsible on his original guarantee. Nevertheless, in the absence of his having waived his fundamental rights of notice, the veteran cannot be called upon to pay the deficiency arising out of a foreclosure proceeding without having notice and the opportunity to make certain that his expo-

in full, was completely unchanged by the 1984 amendments.

sure is minimized by his participation in the determination of that amount.

Under the unacceptable construction of the law urged upon this Court by the Government, the veteran runs the risk of facing greater liability than he would otherwise have had if he had been an ordinary creditor of the bank and given a purchase money mortgage on the property as security for the debt. The Government would seek to hold the veteran personally obligated for any deficiency that remained after the foreclosure sale, even though he was denied the notice required by state law and was therefore precluded from presenting any defense he could have interposed, including the exercise of his equity of redemption. This Court cannot conclude that Congress intended to strip veterans of such fundamental elements of due process of law, particularly under the provisions of a federal program designed for their benefit.

## CONCLUSION

In the many cases where a veteran obligor is himself delinquent in the payments on a debt secured by a federally guaranteed mortgage, the private lender will almost invariably see to it that the veteran is notified of his default and the prospects of foreclosure. But in cases such as this one, where the veteran has long since transferred the property to a third party who has fallen behind in the payments, the veteran cannot be held liable under a perpetual guarantee agreement for the outcome of a foreclosure proceeding as to which he was provided no adequate notice. The laws of New York State clearly condemn such a result, the constitutional guarantee of due process of law forbids it, and justice cries out against it.

Accordingly, defendant's cross-motion for summary judgment is hereby granted. Plaintiff's complaint is dismissed, along with defendant's third-party complaint, without costs.

ALL OF THE ABOVE IS SO ORDERED.