**Stanley W. JENSEN, Plaintiff,**

v.

**Thomas K. TURNAGE, in his Official Capacity as Administrator of the Veterans' Administration, Defendant.**

No. 88–0071–CIV–ORL–18.

United States District Court,
M.D. Florida,
Orlando Division.

Oct. 19, 1990.

Christopher W. Wickersham, Sr., Becks, Becks & Wickersham, Daytona Beach, Fla., for plaintiff.

Ralph E. Hopkins, Asst. U.S. Atty., Orlando, Fla., for defendant.

### ORDER

G. KENDALL SHARP, District Judge.

This matter concerns the enforcement of the home loan program governed by the Veterans' Administration (V.A.). The court is reconsidering cross motions for summary judgment to which the parties filed supplemental briefs. Based on a review of the case file and the relevant law, the court grants the V.A.'s motion for summary judgment and denies Mr. Jensen's motion.

### I. Facts

In May 1982, Stanley W. Jensen, a veteran, obtained a V.A. guaranteed home loan for $100,000.00 from Suburban Coastal Corporation, a private lender, for the purchase of a house in Boca Raton, Florida. The V.A. guaranteed $27,500.00 of the purchase price. Mr. Jensen later sold the

house to Florida Marketing Managing Corporation, and Florida Marketing assumed Mr. Jensen's mortgage. Mr. Jensen did not inform the V.A. about the sale of the house. According to the terms of the indemnity agreement Mr. Jensen had entered with the V.A., he needed the V.A. to approve Florida Marketing as the new obligor in order to release him from his obligation of making the mortgage payments.

In early 1983, Florida Marketing defaulted on the loan, and Suburban Coastal brought a foreclosure action in a circuit court in Palm Beach County. Mr. Jensen was not a party to the lawsuit. At the close of the foreclosure proceeding, Suburban Coastal received the certificate of title to the property and made a claim on the V.A. guaranty. The V.A. paid Anchor Mortgage Services, formerly Suburban Coastal, the guaranteed amount of $27,-500.00.

Mr. Jensen first learned about the default and foreclosure when the V.A. sent him a letter in July 1985 demanding payment of the $27,500.00. The letter also informed Mr. Jensen that his obligation to pay the debt could be waived at an oral hearing, which Mr. Jensen declined to have. Because Mr. Jensen failed to pay the required amount, the V.A. began withholding money from his monthly service-connected benefit payments in late 1985. The V.A. will continue to deduct $120.00 from his monthly benefits until it recoups the entire $27,500.00. In early 1988, Mr. Jensen filed this lawsuit.

The V.A. seeks summary judgment to confirm the manner in which it dealt with Mr. Jensen. The V.A. claims it may recover the money it paid in guaranty of the home loan based on the theory of subrogation or its independent right of indemnity against Mr. Jensen. In contrast, Mr. Jensen contends that the V.A. may not recover because it neither notified him about the default by Florida Marketing nor named him as a party in the foreclosure action brought by Suburban Coastal. Mr. Jensen, therefore, seeks summary judgment to avoid liability on the indemnity agreement and to recover the money the V.A. has withheld from his monthly service-connected benefits.

## II. Legal Discussion

### A. Standard for Summary Judgment

Summary judgment is authorized if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510; *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party bears the burden of proving that no genuine issue of material fact exists. *See Anderson*, 477 U.S. at 248–50, 106 S.Ct. at 2510–11; *Celotex*, 477 U.S. at 324–25, 106 S.Ct. at 2553. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether the moving party has satisfied its burden, all inferences drawn from the underlying facts are considered in a light most favorable to the party opposing the motion, and all reasonable doubts are resolved against the moving party. *Id.* at 255, 106 S.Ct. at 2513; *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

As the United States Supreme Court has stated, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510. For a triable

issue to surface, enough evidence must appear in favor of the nonmoving party to cause a jury to return a verdict for that party. *Id.* at 249–50, 106 S.Ct. at 2510–11. Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.... The moving party is[, therefore,] 'entitled to a judgment as a matter of law'...." *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552 (quoting *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511).

### B. Legal Analysis

■ In May 1982, the V.A. guaranteed part of the purchase price of Mr. Jensen's house. In order to get the guaranteed loan, Mr. Jensen had to sign an indemnity agreement with the V.A. Mr. Jensen had a duty to learn and know the contents of the agreement before signing it. *See Stonebraker v. Reliance Life Ins. Co.,* 123 Fla. 244, 246, 166 So. 583, 584 (Div. B 1936). Mr. Jensen has not alleged, nor does the case file show, that the V.A. either prevented him from reading the document or induced him into signing the policy without reading it. Absent a showing of fraud or misconduct, Mr. Jensen is conclusively presumed to have understood and assented to the terms of his contract with the V.A. *Id.*

According to the indemnity agreement, Mr. Jensen was still responsible for the mortgage payments even after he sold the property to Florida Marketing. For Mr. Jensen to have been discharged from his liability, the V.A. had to accept Florida Marketing as the new obligor, which it never did. Thus, even though Mr. Jensen no longer owned the property and Florida Marketing had assumed the mortgage, Mr. Jensen was still liable for the mortgage payments. 38 C.F.R. § 36.4323(f) (1989). Furthermore, the V.A. was not under a legal duty to notify Mr. Jensen of either the default by Florida Marketing or the foreclosure action brought by Suburban Coastal. The federal regulations and statutes that governed the guaranty at the time only required Suburban Coastal to notify the V.A. about the default and about its plans to commence the foreclosure proceeding. 38 U.S.C. § 1816; 38 C.F.R. §§ 36.4315, .4317; *see also id.* § 36.4334 (guaranty subject to pertinent V.A. regulations and statutes in effect on date of loan). The V.A. was not compelled to contact Mr. Jensen about either matter.

Once the V.A. paid Anchor Mortgage the $27,500.00 in guaranty of the loan, it received a direct right of indemnity against Mr. Jensen. *See United States v. Shimer,* 367 U.S. 374, 386–87, 81 S.Ct. 1554, 1562, 6 L.Ed.2d 908 (1961); *United States v. Rossi,* 342 F.2d 505, 506 (9th Cir.1965); 38 C.F.R. § 36.4323(e) (1989) ("Any amounts paid by the Secretary on account of the liabilities of any veteran guaranteed or insured under the [home loan program] shall constitute a debt owing to the United States by such veteran"). In its letter of July 1985, the V.A. informed Mr. Jensen about both his debt and his opportunity to be relieved from that debt at an oral hearing. After Mr. Jensen declined the chance to be heard and refused to make any payments, the V.A. properly withheld a specific amount from his monthly service-connected benefits. *See* 38 U.S.C. §§ 1826, 3114 (1988).

Although the V.A. did not have to notify Mr. Jensen about the default, the lack of notice to veterans with guaranteed home loans has caused hardship to many veterans and has jeopardized the existence of the home loan program. Each month the V.A. receives about fourteen thousand notices of default. S.Rep. No. 100–204, 100th Cong. 1st Sess. 1, 49, *reprinted in* 1987 U.S.Code Cong. & Admin.News 2207, 2250. The majority of those properties are foreclosed and the veteran carries the burden of paying the guaranteed amount. The high default and foreclosure rates on properties guaranteed by V.A. loans and the significant V.A. inventory of foreclosed houses obtained at liquidation sales has also threatened the viability of the home loan program. *See generally id.* at 13–15, 1987 U.S.Code Cong. & Admin.News at 2214–16. "In many cases, the cost to the V.A. of acquiring, managing, and reselling the properties involved has exceeded the

income realized by the V.A. through property sales." *Id.* at 13, 1987 U.S.Code Cong. & Admin.News at 2214. Owing to the problems that have resulted from the V.A. not contacting veterans about defaults, Congress has altered the law governing the home loan program.

Under the current law, the V.A. must notify a veteran after it learns the property has gone into default. 38 U.S.C. § 1832(a)(4)(A) (1988). The notice should (1) inform the veteran about any alternatives to foreclosure that are available in light of his particular circumstances, (2) inform the veteran about his liability as well as the liability of the V.A. with respect to the loan in case of a foreclosure, and (3) inform the veteran about the availability of counseling to assist him with such matters. *Id.* Congress designed the new notice provision to be effective for a three-year trial period, beginning March 1, 1988, and ending March 1, 1991. Veterans' Home Loan Program Improvements and Property Rehabilitation Act of 1987, Pub.L. No. 100–198, § 4, 101 Stat. 1315, 1316 (1988). Because the new provision is not retroactive, it does not apply to Mr. Jensen. *See Cox v. Schweiker,* 684 F.2d 310, 318–19 (5th Cir. Unit B 1982) (for a statute to have retrospective application, the provision must be explicitly set forth in the statute).

Although a court does not weigh the evidence at the summary judgment stage, *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510, the change in the law raises some doubt about the information contained in Alan J. Pedigo's deposition, which Mr. Jensen submitted to show he was due actual notice. Mr. Pedigo, a V.A. supervisor, claims the V.A. generally supplies veterans with default notices in accordance with certain V.A. manuals and circulars. What remains unclear is whether the manuals and circulars were published before or after the change in the law regarding notice to veterans. In spite of the question regarding the publication date, such materials do not have the "force and effect of law"; they are written to provide V.A. loan servicing personnel with policy guidelines and do not rise to the level of administrative regulations or rules. *See, e.g., First*

*Family Mortgage Corp. v. Earnest,* 851 F.2d 843, 844–45 (6th Cir.1988); *Rank v. Nimmo,* 677 F.2d 692, 698–99 (9th Cir.), *cert. denied,* 459 U.S. 907, 103 S.Ct. 210, 74 L.Ed.2d 168 (1982); *Gatter v. Nimmo,* 672 F.2d 343, 347 (3d Cir.1982); *United States v. Harvey,* 659 F.2d 62, 63–66 (5th Cir. Unit B Oct. 1981). Therefore, the manuals and circulars do not supplant the regulations and statutes that directed the V.A. during its dealings with Mr. Jensen. According to those regulations and statutes, the V.A. did not have to contact Mr. Jensen about either the default or the foreclosure action.

To support his claim that the V.A. may not collect the $27,500.00 because he was denied notice, Mr. Jensen relies mainly on *United States v. Whitney,* 602 F.Supp. 722 (W.D.N.Y.1985). In the case, the government sued Mr. Whitney, a veteran, under the legal doctrines of indemnity and subrogation for a deficiency that arose from the foreclosure of property he originally owned. Mr. Whitney was not made a party to the foreclosure action. *Id.* at 725. Based on New York law, the court ruled that the V.A. had waived its right to receive a deficiency judgment by not making Mr. Whitney a defendant in the foreclosure action and by not serving him with personal process. The V.A. was thereby barred from recovering the amount it paid in guaranty of the loan. *Id.* at 730–31.

To strengthen the holding in *Whitney,* Mr. Jensen suggests that this court review several Florida cases. The cases state that a mortgagor who conveys all his rights in mortgaged property to another person is not a necessary party to a foreclosure action, unless a deficiency decree is sought. *E.g., Dennis v. Ivey,* 134 Fla. 181, 185, 183 So. 624, 626 (Div. B 1938) (per curiam); *Hay v. Isetts,* 98 Fla. 1026, 1034, 125 So. 237, 240 (1929). Thus, as with the veteran in *Whitney,* Mr. Jensen argues that because he was not made a party to the underlying foreclosure proceeding, the V.A. may not recover a deficiency judgment from him.

The cases submitted by Mr. Jensen do not change this court's decision that he owes the V.A. $27,500.00. These cases do

not apply to the facts of the instant action; a deficiency judgment was never sought against Mr. Jensen in a court of law. Suburban Coastal recovered the deficiency from the foreclosure by making a claim on the V.A. guaranty. After the V.A. paid the deficiency, it received a direct right of indemnity against Mr. Jensen. *See Shimer,* 367 U.S. at 386–87, 81 S.Ct. at 1562; 38 C.F.R. § 36.4323(e). The V.A. pursued its right of indemnity in an administrative fashion; it provided Mr. Jensen with notice and an opportunity to be heard before withholding money from his monthly benefits.

■ Moreover, this court disagrees with the reasoning in *Whitney.* "[S]tate law may not impair the V.A.'s independent right to seek indemnity pursuant to 38 C.F.R. § 36.4323(e)." *Jones v. Turnage,* 699 F.Supp. 795, 799 (N.D.Cal.1988), *aff'd sub nom. Jones v. Derwinski,* 914 F.2d 1496 (9th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1309, 113 L.Ed.2d 243 (1991). The purpose of the home loan program is public in character and national in scope. Because the federal interest in the program requires uniform results, the remedy for the enforcement of guaranteed home loans should not depend on the vagaries of state law. *See United States v. Wells,* 403 F.2d 596, 597–98 (5th Cir.1968); *United States v. Riley,* 340 F.Supp. 1164, 1167–68 (W.D.La.1972). As a result, this court declines to follow the reasoning in *Whitney* and the other cases offered by Mr. Jensen. Even though Mr. Jensen was not made a party to the foreclosure action or given actual notice of the proceeding, he must still indemnify the V.A. for the amount it paid in guaranty of his home loan.

This court's conclusion is confirmed by *United States v. Rossi,* 342 F.2d 505 (9th Cir.1965). In the case, Mr. Rossi, a veteran, had obtained a V.A. guaranteed home loan from a private lender. Because Mr. Rossi was unable to make the loan payments, he conveyed the property back to the builder. The V.A., however, did not release Mr. Rossi from his obligations under the indemnity agreement. *Id.* at 505–06. The builder sold the property and the buyer defaulted on the loan. The lender foreclosed and collected the guaranteed amount from the V.A., which in turn demanded the amount from Mr. Rossi. After Mr. Rossi refused to make payment, the V.A. sued him in a federal district court. Viewing the matter as a deficiency judgment under California law, the court held in favor of Mr. Rossi. The court's ruling stemmed, in part, from "the failure of the United States to give [Mr. Rossi] notice of the foreclosure proceedings and the possibility of a deficiency when it knew that the property was being sold and someone other than [Mr.] Rossi was making payments on the note...." *Id.* at 506. The omission by the United States precluded Mr. Rossi "from paying the note and recovering the property [and thus] the United States was ... barred from recovery against him." *Id.*

The district court's ruling was reversed on appeal. Even though Mr. Rossi did not receive notice, the appellate court stated that he "was under an independent obligation to indemnify the United States for the amount paid under the guaranty, and the terms of that guaranty are governed by federal law. The obligation was not released by the Administrator. There was no estoppel that prevents enforcement of the guaranty." *Id.* The court pointed out that in *United States v. Shimer,* 367 U.S. 374, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961), the Supreme Court

> held that the procedures outlined in the regulations governing guaranty procedures were intended by Congress to provide a uniform system for determining the Administrator's obligation as guarantor and to displace state law in their operation, and that they provide an independent right of indemnity to the Veterans Administration, regardless of the failure of a lender's rights against the principal.

*Id.* Therefore, the appellate court ruled that "the district court's conclusion that this action was one for a deficiency judgment to be governed by the notice and other provisions of California law cannot stand." *Id.*

In explaining *Rossi*, the Ninth Circuit stated in *Whitehead v. Derwinski*, 904 F.2d 1362, 1369 (9th Cir.1990), that "the V.A. was not responsible for the lack of notice; the lender, proceeding against the third party in foreclosure, failed to notify the veteran debtor." Even though the private lender failed to notify Mr. Rossi, he was still required to indemnify the V.A. for the amount it paid under the guaranty. Likewise, Mr. Jensen must indemnify the V.A. despite not having received actual notice of either the default or the foreclosure action.

### III. Conclusion

The court concludes that the undisputed facts and the reasonable inferences drawn therefrom do not establish a genuine issue of material fact that would warrant bringing this lawsuit to trial. When Mr. Jensen signed the indemnity agreement, he received notice of his obligations to the V.A. He knew he needed the V.A. to approve the sale of the property to Florida Marketing for him to be released from his obligations under the agreement. He never sought V.A. approval. Under the governing federal regulations and statutes, the V.A. did not have to inform Mr. Jensen about either the default or the foreclosure action. After the V.A. paid the guaranteed amount of $27,500.00 to Anchor Mortgage, that amount became Mr. Jensen's debt to the government and the V.A. gained an independent right of indemnity against him. The V.A. followed the relevant notice provisions to apprise Mr. Jensen of the debt and the opportunity for an oral hearing. Because Mr. Jensen refused to pay the outstanding sum, the V.A. properly began withholding $120.00 from his monthly service-connected benefits and may continue to do so until it recovers the entire $27,500.00. Consequently, as a matter of law, this court GRANTS the V.A.'s motion for summary judgment and DENIES Mr. Jensen's motion for summary judgment.

It is SO ORDERED.