**James G. BENDER, Jr., Individually and as Successor Administrator of the Estate of James G. Bender, Sr., Plaintiff,**

v.

**CITY OF ROCHESTER, NEW YORK, Defendant.**

**No. CIV–83–828T.**

United States District Court,
W.D. New York.

Aug. 9, 1984.

Johnson, Mullan, Brundage & Keigher, P.C., Rochester, N.Y. (Scott C. Smith, Rochester, N.Y., of counsel), for plaintiff.

Louis N. Kash, Corporation Counsel, Rochester, N.Y., (Susan L. Hauser, Rochester, N.Y., of counsel), for defendant.

## MEMORANDUM DECISION and ORDER

TELESCA, District Judge.

In this case, the plaintiff claims that the notice provisions found in the City of Rochester *in rem* tax foreclosure statute do not provide adequate notice to property owners where that notice was mailed only to the last known address of the owner listed on the tax roles and not to the Administrator of the property owner's estate. Plaintiff claims that as the deceased's representative, he was entitled to *actual* notice of the pending foreclosure proceeding. Both parties move for summary judgment and for the reasons stated below, I dismiss the plaintiff's complaint and hold that the City's foreclosure statute, and particularly the notice provision thereof, is constitutionally sufficient.

## FACTS

The relevant facts are not in dispute. James Bender, Sr., plaintiff's father, was the owner of a parcel of property located at 27 Pembroke Street in the City of Rochester until his death in December of 1979. Thereafter, plaintiff's brother, Robert Bender, was granted Letters of Administration for the estate of James G. Bender, Sr., but Robert died in November of 1981 before the estate was distributed. Thereafter, plaintiff became the successor administrator of his father's estate.

From December of 1979 to November of 1981 Robert Bender resided at the home located at 27 Pembroke Street. After Robert's death, the house was left vacant.

On November 3, 1982 the City commenced an *in rem* tax foreclosure proceeding against the property at 27 Pembroke Street. (This action was simultaneously commenced against 2,867 other parcels of property upon which back taxes were also owed for a period exceeding one (1) year). According to the City, some One Thousand Three Hundred One and 20/100 Dollars, ($1,301.20) in back taxes was owed on the Pembroke Street property. Plaintiff does not dispute this figure.

Pursuant to Article Nine, Part E, Title 4 of the Rochester City Charter,[1] the City Treasurer filed a list of properties to be foreclosed upon in the Monroe County Clerk's Office on November 3, 1982. On the same date, the list was published in two (2) local newspapers, and a notice was sent to the owner of each parcel at the last known address as reflected in the City Treasurer's records. According to these records, the owner of the property located at 27 Pembroke Street was plaintiff's decedent, James Bender, Sr., and his address was the same as the address of the property. Accordingly, a Notice of Foreclosure was sent to 27 Pembroke Street (which at this time was unoccupied).

Under the terms of the City Charter, property owners of foreclosed properties

1. This section of the Rochester City Charter is substantially similar to New York Real Property

Tax Law Section 1124.

are permitted to redeem these properties by paying all back taxes and additional expenses of the foreclosure before the judgment of foreclosure is entered. Once the redemption period had expired in this case, (during which no objection to the foreclosure was raised or redemption attempted), a judgment of foreclosure for the Pembroke Street property was signed on January 18, 1983 and was filed some three (3) days later. The property was thereafter sold at auction.

According to the plaintiff, and for the purposes of these motions it must be assumed to be true, neither he nor his two co-owners, (his sister and sister-in-law) ever received actual notice of the foreclosure action until after the redemption period had expired, the judgment entered and the property sold.

## DISCUSSION

The plaintiff contends that since *actual notice* was not given to any of the three (3) co-owners of the property prior to the foreclosure, the subsequent foreclosure and sale were constitutionally defective. In support of his position, plaintiff relies upon *Mullane v. Central Hanover Bank and Trust Company*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950) and *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983).

In *Mullane*, the Supreme Court held that a state could not affect an individual's constitutionally protected interest in life, liberty or property without providing "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections". 339 U.S. at 314, 70 S.Ct. at 657. The Court ruled that published notice in a newspaper of an action to settle the account of a common trust fund was insufficient, where the beneficiaries names and addresses were actually known to the trustees.

Recently, in *Mennonite, supra,* the Supreme Court again examined the constitutional sufficiency of notice under the due

process clause of the Fourteenth Amendment. There, an Indiana tax foreclosure statute (substantially similar to the statute at issue here) came under attack by the mortgagee of the foreclosed property. The parcel of property was sold by the County at foreclosure after the County Treasurer had sent notice to the property owner and published notice to the public according to the statute. The mortgagee of the property, however, did not actually learn about the sale until *after* the redemption period had expired, and thereafter brought an action to vacate the sale, alleging that the foreclosure statute violated due process because it did not require that adequate notice be given to a mortgagee of record. The Supreme Court agreed, reversing the Indiana Supreme Court, and held that "unless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of *Mullane*". 103 S.Ct. at 2711.

Applying the facts of this case to the standards established in *Mullane* and *Mennonite,* there can be no doubt that plaintiff and the two other co-owners had a constitutionally protected property interest in the 27 Pembroke Street parcel. Thus, *Mullane* requires that a determination be made as to whether the notice given by the City under its charter provisions was sufficient and "reasonably calculated, under all circumstances, to apprise [plaintiff] of the pendency of the action and afford [he and his co-owners] an opportunity to present their objections". *Mullane, supra*, 339 U.S. at 314, 70 S.Ct. at 657.

Plaintiff argues that the Supreme Court's holding in *Mennonite* requires that *actual notice* be given to all interested parties. This view, however, ignores the fundamental principle set forth in all of the cases from *Mullane* through *Mennonite*, which shunned any such broad brush rule in favor of a "reasonableness under the circumstances" analysis. *See Walker v. City of Hutchinson*, 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956); *Schroeder v. City of New York*, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962); *Greene v. Lind-*

*sey,* 456 U.S. 444, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982). When this analysis is applied to the facts of this case and the statute involved, this Court cannot conclude that due process was violated. The Rochester City Charter meets the test of both *Mullane* and *Mennonite.*

In *Mennonite* the mortgagee was unlikely to receive actual notice of the foreclosure action from its mortgagor "with whom the mortgagee was not in privy". However, the mailing of notice by the City in this case to the last known address of the owner, (which also happened to be the address of the foreclosed property) presents a far different situation. In the vast majority of foreclosure situations, notice sent to the last known address and to the actual property in question will adequately apprise the owner of the property of the commencement of the foreclosure proceeding. In this case, due to the death of the owner and the subsequent death of his estate's first administrator, actual notice was never received.

Yet the Administrator, being charged with the duty to marshall the deceased's assets and to pay his debts should have had some inkling that since the property taxes were not paid on his father's home, the prospect of a foreclosure proceeding was a likely result. Had he advised the City Treasurer of his appointment as Administrator and requested tax bills to be sent to his address, the result in this case would be different. However, this Court does not view *Mennonite* as requiring the City to verify whether or not the property owner is still living and then send a foreclosure notice to the estate's representative. Indeed, it is the estate's representative who has the duty to notify the City of its appointment and of any new address to which notice should be sent. This is so because it is his statutory duty as a fiduciary to pay the deceased's debts which is an important part of the estate's administration. It is this affirmative duty to pay the debts and the

"... taxes assessed against the property of the deceased ..."[2] which shifts the burden to the Administrator to notify the City of the correct address to be used for mailing tax bills and notices. Neither *Mullane* nor *Mennonite* require otherwise.

Accordingly, I hold that the actions by the City in this case satisfy the requirements set forth by the Supreme Court in *Mullane* and its progeny. Therefore, the Clerk is directed to enter summary judgment in favor of the defendant and the complaint is dismissed.

SO ORDERED.

---

**2.** S.C.P.A. Section 1811 imposes upon every fiduciary of an estate the duty to proceed with due diligence to pay the debts of the decedent in the following order:

"1811(b) taxes assessed on the property of the deceased previous to his death ...".