**UNITED STATES of America, Plaintiff,**

v.

**James W. MURDOCK, Defendant.**

**Civ. No. F 85–374.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Dec. 16, 1985.
Supplemental Order Jan. 24, 1986.

Charles J. Brunette, Atty. for Veterans Admin., Indianapolis, Ind., for plaintiff.

James W. Murdock, pro se.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on plaintiff's ("government") motion for summary judgment. The defendant ("Murdock"), who is proceeding *pro se,* filed a letter to the court as his response. For the following reasons, the ruling on plaintiff's motion

for summary judgment will be deferred pending further submissions by the parties.

This case involves an attempt to enforce a guaranty made by Murdock as part of a home loan he obtained from the Veteran's Administration ("VA") in 1968. Murdock sold the property, and the subsequent owners defaulted on the mortgage. The property was foreclosed, and now the government seeks to enforce Murdock's promise to pay any amount paid out by the VA as a result of the foreclosure. The government seeks $990.76 principal and interest as of April 8, 1985, with interest at a rate of 4% per annum.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, summary judgment serves as a vehicle with which the court "can determine whether further exploration of the facts is necessary." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975).

In making this determination, the court must keep in mind that the entry of summary judgment terminates the litigation, or an aspect thereof, and must draw all inferences from the established or asserted facts in favor of the non-moving party. *Munson v. Friske*, 754 F.2d 683, 690 (7th Cir.1985). The non-moving party's reasonable allegations are to be accepted as true for purposes of summary judgment. *Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1218–19 (7th Cir.1984). A party may not rest on the mere allegations of the pleadings or the bare contention that an issue of fact exists. *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). *See also Atchison, Topeka & Santa Fe Railway Co. v. United Transportation Union*, 734 F.2d 317 (7th Cir.1984); *Korf v. Ball State University*, 726 F.2d 1222 (7th Cir.1984). *See generally* C. Wright, *Law of Federal Courts*, § 99 (4th ed. 1983); 6 *Moore's Federal Practice*, § 56.15 (2d ed. 1984).

Thus, the moving party must demonstrate the absence of a genuine issue of material fact. Even if there are some disputed facts, where the undisputed facts are the material facts involved and those facts show one party is entitled to judgment as a matter of law, summary judgment is appropriate. *Egger v. Phillips*, 710 F.2d 292, 296–97 (7th Cir.1983); *Collins v. American Optometric Assn.*, 693 F.2d 636, 639 (7th Cir.1982). *See also Bishop v. Wood*, 426 U.S. 341, 348, 348 n. 11, 96 S.Ct. 2074, 2079, 2079 n. 11, 48 L.Ed.2d 684 (1976).

Based upon these principles, and given the deference due Murdock as a *pro se* litigant, *see Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the facts of this case are as follows. In 1968, Murdock obtained a loan for $14,400.00 from the VA to purchase a house on Euclid Avenue in Fort Wayne, Indiana. The loan agreement contained the following language:

Some GI home buyers have the mistaken impression that if they sell their homes when they move to another locality, or dispose of it for any other reason, they are no longer liable for the mortgage payments and that liability for these payments is solely that of the new owners. Even though the new owner may agree in writing to assume liability for your mortgage payments, this assumption agreement will *not* relieve you from liability to the holder of the note which you signed when you obtained the loan to buy the property. Also, unless you are able to sell the property to a credit-worthy obligor who is acceptable to the VA and who will assume the payment of your obligation ... you will not be relieved from liability to repay any guaranty claim which the VA may be required to pay your lender on account of default in your loan payments.

Murdock signed this agreement, acknowledging that he read it and understood it.

In 1974, Murdock sold the property, and the new owners subsequently defaulted on their payments under the mortgage. Therefore, the holder of the note, the Federal National Mortgage Association ("FNMA"), filed a mortgage foreclosure action in the Allen County Circuit Court, naming Murdock and his wife among several defendants. Murdock was served by publication of a notice in the Fort Wayne Journal-Gazette. The property was foreclosed in October, 1982, and the VA paid $990.76 to FNMA under its guaranty. In September, 1984, the VA contacted Murdock, informing him that he owed the VA a debt under the guaranty provision quoted above. Murdock applied for a waiver of debt, which was denied. This action followed.

Murdock's two letters to this court do not deny the existence of the loan or the provision of the loan which stated that Murdock could be liable under the loan even after selling the house. Rather, Murdock's letters raise one issue concerning due process. According to Murdock, he never saw the notice of publication concerning the foreclosure action, and he never received notice of the foreclosure suit itself until two years after the property was sold. Had he known of the foreclosure proceeding, Murdock claims he would have purchased the property back. He believes that a greater effort to find him could have been made, and thus the debt created by the underlying foreclosure violates his right to due process. Murdock believes he should be relieved of a debt created by a proceeding of which he had no notice, and Murdock cites one case: *United States v. Whitney*, 602 F.Supp. 722, 723 (W.D.N.Y.1985).

In *Whitney*, a veteran obtained a loan which contained a similar promise to pay even after the property was sold to another party. The veteran sold the property, and the subsequent owner went into default. The bank holding the mortgage filed a foreclosure action in which the veteran was not named and of which the veteran had no notice. After paying on its guaranty, the VA sued the veteran for the deficiency on which the VA had paid. The court held that the veteran's lack of notice violated both state law concerning service in foreclosure actions and the due process clause of the fifth and fourteenth amendments, and thus the veteran was not required to pay the VA under the terms of his guaranty. This holding agrees with the dictum of the Seventh Circuit in *Mortgage Associates, Inc. v. Cleland*, 651 F.2d 476, 479 (7th Cir.1981), which states that "failure to give [the veteran] notice raises serious due process questions in any attempt to saddle [him] with an increased deficiency."

This case differs from *Whitney* in one important respect: Murdock was named a defendant in the underlying foreclosure action. Therefore, in order for the foreclosure to be valid, service on Murdock was necessary. FNMA obtained service by publishing notice in a local newspaper because it could not determine his whereabouts, which is a perfectly acceptable form of service of process under the Indiana statutes governing mortgage foreclosures. *See* I.C. 32–8–18–1. The real issue here is whether this notice is constitutionally sufficient.

In *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950), the Supreme Court held that "an elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." The *Mullane* Court held that service by publication could be sufficient notice to defendants who were unknown or whose whereabouts "could not with due diligence be ascertained." *Id.* at 317, 70 S.Ct. at 659. In a subsequent case, the Supreme Court held that a mortgagee is entitled to notice of a county tax sale that is more than simply notice by publication:

When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice to the mortgagee's last known available address, or by personal service. But unless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of *Mullane*.... Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interest of *any* party ... if its name and address are reasonably ascertainable.

*Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798–800, 103 S.Ct. 2706, 2711–12, 77 L.Ed.2d 180 (1983) (emphasis in original). Justice O'Connor's dissent in *Mennonite* characterizes this holding as a *"per se* rule against constructive notice," *id.* at 805, 103 S.Ct. at 2715, which holds that "constructive notice can *never* suffice whenever there is a legally protected property interest at sake." *Id.* at 803, 103 S.Ct. at 2713 (emphasis in original).

Cases decided after *Mennonite* emphasize that due process requires notice by mailing, and not merely by publication, when the notifier knows or can obtain knowledge of the address of the person entitled to notice. *See United States v. 125.2 Acres of Land*, 732 F.2d 239, 241–42 (1st Cir.1984); *Bender v. City of Rochester, N.Y.*, 588 F.Supp. 1405, 1407–08 (W.D.N.Y.1984); *Zimmer Paper Products v. Berger & Montague*, 586 F.Supp. 1555, 1557 (E.D.Pa.1984); *F.D.I.C. v. Morrison*, 568 F.Supp. 1240 (N.D.Ala.1983). Perhaps the best explanation of a court's responsibilities in light of *Mennonite* is set out in *Bender v. City of Rochester:*

What the [*Mennonite*] Court has done is shift the inquiry from whether under all the circumstances the notice was reasonably calculated to inform those with protectable interests to a more focused examination of whether the names of such persons are "reasonably ascertainable," in which event mail or equivalent notice is required.

765 F.2d 7 at 11 (2d Cir.1985). The court must therefore determine whether Murdock's address was "reasonably ascertainable," and whether, in light of *Mullane* and *Mennonite*, FNMA exercised "due diligence" in attempting to ascertain Murdock's whereabouts before publishing notice of the foreclosure.

Such an inquiry is heavily dependent upon the facts of the case. Here, Murdock claims he moved to Auburn, Indiana after selling the Fort Wayne property. Whether FNMA knew of the move would affect the level of diligence it should have exercised before determining that Murdock's whereabouts were "unknown" so as to justify service by publication. The essence of the inquiry is whether, given what FNMA knew about Murdock's whereabouts or should have known through "reasonable" efforts to ascertain his whereabouts, the amount of effort expended by FNMA in attempting to serve Murdock was sufficient to conclude that his address was not "reasonably ascertainable."

Unfortunately, the government has presented no evidence on FNMA's knowledge of Murdock's address or the attempts to serve him before the issuance of the notice of publication. Nor has the government addressed the legal sufficiency of the notice given Murdock in light of these facts and *Mennonite*. The court therefore cannot say as a matter of law that the government is entitled to judgment because the notice given Murdock may have been constitutionally insufficient, so that, like the defendant in *Whitney*, Murdock cannot be liable for the deficiency debt.

Because this inability to grant summary judgment arises from the presence of factual issues not addressed by the government, the court will defer ruling on the motion until both parties have had an opportunity to develop these facts and address the applicable law. After such further briefing and exploration of the facts, the court will be able to rule on the government's motion.

Therefore, the court hereby GRANTS the plaintiff thirty (30) days to file such

further briefs as it deems necessary on the issue of the constitutional sufficiency of the notice of the state foreclosure proceedings supplied the defendant in this case. The plaintiff may also submit affidavits in connection with its brief, including those of any persons involved in searching for the defendant for purposes of service of process in the foreclosure proceeding and in preparing the Notice by Publication which was ultimately issued in that case. The defendant is hereby GRANTED twenty (20) days after the filing of any such further brief to respond thereto, and the plaintiff shall then have ten (10) days in which to reply.

## SUPPLEMENTAL ORDER

This matter is before the court on plaintiff's motion for summary judgment. On December 16, 1985, this court entered an order deferring its ruling on the motion pending further submissions by the parties. The plaintiff ("government") filed a reply brief on January 14, 1986, and the defendant ("Murdock") submitted two letters to the court. For the following reasons, the plaintiff's motion for summary judgment will be denied.

As explained in the December 16, 1985 order, this cause involves the government's attempt to enforce a guaranty made by Murdock as part of a home loan he obtained from the Veteran's Administration ("VA") in 1968. Murdock sold the property, and the subsequent owners defaulted on the mortgage. The property was foreclosed by the holder of the mortgage, the Federal National Mortgage Association ("FNMA"), and the VA was forced to pay a deficiency. The government now wants Murdock to pay this deficiency under the guaranty.

Murdock's complaint about paying under the guaranty is that he had no notice of the underlying foreclosure action. He avers that had he known, he would have intervened in the foreclosure action and brought the loan current. The court's December 16, 1985 order focused on the due process argument implicit in this claim. The court

recognized that Murdock had been served by publication in the foreclosure action, but interpreted the Supreme Court's holding in *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), and the cases following it, as requiring that the court inquire into whether Murdock's whereabouts were "reasonably ascertainable" so as to require more notice than mere notice by publication. The court gave the government thirty days to submit whatever briefs and affidavits it wished on the issue of the "ascertainability" of Murdock's whereabouts at the time of the underlying foreclosure action.

The government's response has not been to file any affidavits suggesting what, if any, efforts were made to ascertain Murdock's whereabouts. Instead, it has chosen to argue that the due process concerns raised in the December 16, 1985 order are irrelevant to this action, which the government views as a "suit on an indemnification agreement" and "nothing more." It argues that if Murdock has a due process claim, it lies against FNMA, which is wholly distinct and separate from the government.

What the government's argument fails to address, despite this court's request that it do so, is the holding of *United States v. Whitney*, 602 F.Supp. 722, 723 (W.D.N.Y. 1985). In *Whitney*, the VA attempted to enforce the same guaranty against a veteran as is involved here. The veteran involved in that case was not named in the underlying foreclosure action, and had no notice of it. Despite the fact that the suit in *Whitney* was "nothing more" than a "suit on the same indemnification agreement," the court held that the veteran's lack of notice violated the fifth and fourteenth amendments, and thus the veteran was not required to pay on the guaranty.

The lesson of the *Mennonite* case is that a person is entitled to notice as a "minimum constitutional precondition" to any proceeding "which will adversely affect the liberty or property interest" of that person. 462 U.S. at 800, 103 S.Ct. at 2712. The *Whitney* court held that a vet-

eran who receives no meaningful notice of the underlying foreclosure proceeding "is denied the opportunity to exercise his equity of redemption or to bid in the proceeding disposing of the property," which the court recognized as a "legally protected property interest." 602 F.Supp. at 732. *See also Federal Deposit Ins. Corp. v. Morrison*, 747 F.2d 610 (11th Cir.1984) (mortgagor's equity of redemption constitutes "property" protected by the Due Process Clause). Thus, what the underlying foreclosure sought to do was extinguish Murdock's equity of redemption, a property right protected by the fifth amendment. He was therefore entitled to proper notice.

█ Murdock was named in the underlying foreclosure, and was served by notice of publication. However, the holding of *Mennonite* makes clear that notice by publication is constitutionally insufficient if the party's name and address are reasonably ascertainable. In such a case, due process requires "notice by mail or other means as certain to ensure actual notice." 462 U.S. at 800, 103 S.Ct. at 2712. *See also United States v. 125.2 Acres of Land*, 732 F.2d 239, 241–42 (1st Cir.1984); *Bender v. City of Rochester*, 588 F.Supp. 1405, 1407–08 (W.D.N.Y.1984), *aff'd*, 765 F.2d 7 (2d Cir. 1985); *Zimmer Paper Products, Inc. v. Berger & Montague*, 586 F.Supp. 1555, 1557 (E.D.Pa.1984), *aff'd*, 758 F.2d 86 (3d Cir.1985). Murdock has claimed that his new address could have easily been obtained, and the government has not offered any evidence about the efforts made to discover Murdock's whereabouts prior to the issuance of the notice by publication. Therefore, there is a factual issue about whether Murdock's address was reasonably ascertainable, and thus whether Murdock's due process rights were violated by the underlying foreclosure proceeding.

█ The government argues that these constitutional concerns are irrelevant because of the nature of the suit. It is certainly true that when the VA is required to make payments on a home loan in default, it may seek reimbursement from the veteran under the guaranty either on theory of subrogation or an independent right of indemnification. *United States v. Shimer*, 367 U.S. 374, 386, 81 S.Ct. 1554, 1562, 6 L.Ed.2d 908 (1961); *Whitney*, 602 F.Supp. at 733; 38 C.F.R. § 36.4323. Under a subrogation theory, the government would only acquire whatever rights FNMA had. If FNMA had violated Murdock's due process rights, it would not be able to enforce the judgment against Murdock. Thus, the government would not be able to recover based on that judgment either. *Whitney*, 602 F.Supp. at 733–34.

█ Perhaps sensing the pitfalls of a subrogation theory, the government here argues that it seeks to enforce the guaranty under a theory of indemnification. The government's right to indemnification is not extinguished by the fact that FNMA could not enforce the foreclosure judgment against Murdock. *Shimer*, 367 U.S. at 387, 81 S.Ct. at 1562. However, the *Whitney* court held in effect that the right to indemnification can be lost by the government through "intimate complicity" in the violation of the veteran's constitutional rights. This complicity was described as follows:

In bringing the foreclosure proceeding, the bank was only complying with the V.A.'s own regulations, which conspicuously fail to acknowledge or respect the veteran's constitutionally guaranteed right to notice.

Since federal laws require the lender to deliver notice of the foreclosure proceedings, along with the name of the original veteran obligor, to the V.A. thirty (30) days in advance, the Government could have easily insured that the veteran had been sent "notice by mail or other means as certain to ensure actual service" ... Since the Government failed to do so, it cannot now hold the veteran liable to pay a deficiency arising out of the foreclosure proceeding without having any notice of that proceeding. Any contrary holding would permit the Government to circumvent and undermine the veteran's statutory and constitutional rights to prior notice of the foreclosure proceeding.

602 F.Supp. at 734. Thus, "intimate complicity" sufficient to extinguish the government's indemnification rights can be found in such simple acts as failing to recognize the veteran's constitutional right to notice in the VA's regulations, and in failing to inform the veteran once notice of the foreclosure is received. There is nothing to suggest that the government avoided either of these pitfalls in this case.

The government points the finger at FNMA, in a sense arguing that giving notice to Murdock was FNMA's responsibility so that the government cannot be bound by FNMA's improprieties. However, there is some evidence of close involvement with FNMA in this case. The Decision on Waiver of Indebtedness, attached as an exhibit to the motion for summary judgment, indicates that the VA received the required Notice of Intention to Foreclose, and that a staff member of the Loan Service section had spoken several times with Mrs. Jacqueline Bowen, the then current resident of the house. (This largely undercuts the argument made in the reply brief that Murdock failed to tell the VA that he had sold the house, because the VA knew someone else was living there and attempting to make the payments on the mortgage.) The case history set out in the Decision on Waiver of Indebtedness suggests significant VA involvement with the property during the time of the foreclosure. Further, the VA paid the deficiency in March, 1984, and was able to locate Murdock to demand payment under the guaranty within six months. This suggests, at least superficially, that the VA knew where to find Murdock. Thus, far from being separate and apart from the foreclosure, the evidence currently available to the court suggests that the VA played a significant role in the foreclosure which might suggest "intimate complicity."

■ The government's attempt to make this into "nothing more" than a suit for indemnification also belies the real stakes of the guaranty. In order to secure a VA loan, a veteran must agree to be liable on the loan even if he sells the property to someone else. The guaranty lasts for the life of the loan. Thus, veterans run the risk of being confronted, fifteen or twenty years down the road, with a sudden demand for indemnification because a second or third subsequent purchaser has defaulted on the loan. There is nothing intrinsically wrong with extracting such a promise as part of a loan transaction, but there is something fundamentally unfair about approaching a veteran and requiring payment on the guaranty when the veteran is completely unaware that the loan has gone into default. In such a situation, the veteran's rights under the mortgage have already been extinguished without any chance to exercise them. He has only one choice: pay on the guaranty. Enforcement of a contractual obligation in light of such a violation of a constitutional right to due process should not be tolerated. In short, the government here cannot avoid the issue of the sufficiency of notice afforded Murdock in the underlying foreclosure proceeding.

■ Thus, the court is faced with the factual dispute as to whether or not Murdock's address was "reasonably ascertainable" so that the notice by publication in the foreclosure was constitutionally insufficient. There is simply insufficient evidence on this point for the court to rule one way or the other. The government tries to argue that the notice was sufficient "on its face" because an attorney filed an affidavit in the foreclosure saying that FNMA was unable to locate Murdock. However, every case in which a collateral attack is made on the basis of insufficient service will contain some "prima facie" showing of proper service; that showing does not foreclose the collateral attack itself. The court must therefore hear evidence to decide this factual issue. Given that there is a genuine issue of material fact, summary judgment cannot be granted.

■ It is important to note what this order *does not* say. The court is not finding that the service on Murdock in the foreclosure proceeding was constitutionally insufficient; rather, the court is simply

holding that it cannot now make a finding that it was sufficient. Perhaps the government will be able to show that reasonable efforts were made to ascertain Murdock's whereabouts by FNMA, and thus notice by publication was proper. If so, the government is entitled to judgment on the complaint in this cause, because Murdock has admitted that the guaranty requires him to pay if it is enforceable under these facts. But it is important to note that the government will have to prove that the service in the underlying foreclosure was constitutionally proper in order to prevail in this cause. Murdock has raised sufficient doubts about that service to require such proof.

This will perhaps make the trial of this cause appear to be an examination into collateral matters. But the cogent analysis of *Whitney* requires this result in order to guarantee the constitutional rights of veterans. As that court forcefully put it:

> [I]n cases ... where the veteran has long since transferred the property to a third party who has fallen behind in the payments, the veteran cannot be held liable under a perpetual guarantee agreement for the outcome of a foreclosure proceeding as to which he was provided no adequate notice ... the constitutional guarantee of due process of law forbids it, and justice cries out against it.

602 F.Supp. at 735.

### Conclusion

For the reasons set forth above, the plaintiff's motion for summary judgment is hereby DENIED.