WILLIAMS, Judge.
This case involves a foreclosure on real estate via the ordinary process. The primary issue is whether the maker of a promissory note, the payment of which has been assumed by another party, is entitled to notice of delinquency of the note prior to demand for payment of the matured or accelerated debt.

Facts

Celina Recinos Portillo and her husband, Rene A. Portillo executed a promissory note in the amount of $28,000.00 in favor of plaintiff’s predecessor, Homestead Savings Association, on July 16, 1976. The note was secured by an Act of Mortgage encumbering property bearing Municipal Nos. 2363-65 N. Yillere Street and bearing the same date as the promissory note. The Portillos sold the property to Dewey C. Howze on December 1, 1977. The parties executed an Act of Sale with Assumption of Mortgage, and the interest rate on the loan amount was increased by one-half a percent.
In 1988, Dr. Howze defaulted on the loan. Demand for payment in full was made upon Dr. Howze on March 1, 1988. The same demand was made upon the Por-tillos in May of 1988. The Portillos received no notice of delinquency of the loan until the installments had been accelerated and the loan matured.
In July of 1989, French Market Homestead filed, suit against Mr. and Mrs. Portillo and Dr. Howze. The trial court rendered judgment against both Dewey Howze and Mr. and Mrs. Portillo, recognizing the lien and mortgage. The court further imposed personal liability for the indebtedness upon Dr. Howze. However, the court refused to impose personal liability upon Mr. and Mrs. Portillo because they had not received notice of delinquency prior to receiving a demand for payment of the note in full. Plaintiff appeals.
Appellant argues there is no requirement that a notice of delinquency be sent to the maker of a promissory note, which note was assumed by a third party, prior to sending notice of demand for payment of the accelerated debt. There is no statute or jurisprudence which requires a creditor *1141 to send a preliminary notice of delinquency prior to making demand.[1] Further, the mortgage sued upon contains a waiver of notice.
Defendants urge their right to due process of law requires they be given notice of delinquency of the note and the opportunity to bring the note current, prior to demand for the payment of the accelerated debt.[2] We disagree.
The trial court based its judgment on the fact that the defendants had not received notice of delinquency and therefore they were not afforded the opportunity to bring the note current.
Defendants cite Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) in support of the trial court judgment. In Mennonite, the Court held the failure to give the mortgage holder, whose address was reasonably ascertainable, actual notice of the pending tax sale violated procedural due process because the mortgagee clearly has a legally protected property interest.
The broad language of Mennonite has been extended by courts outside of Louisiana to apply to foreclosure proceedings on conventional mortgages. See U.S. v. Whitney, 602 F.Supp. 722 (W.D.N.Y.1985) and U.S. v. Murdock, 627 F.Supp. 272 (N.D.Ind.1985).[3] The conclusion we reach is not at odds with Mennonite, Whitney or Murdock. These cases are readily distinguishable from the instant case. The cited cases require notice of foreclosure to those with a legally protected interest in the property, not notice of delinquency of the note. The Portillos in fact received notice of foreclosure.[4] Lack of notice of deficiency of the note cannot vitiate the Portillos’ obligation to pay their debt to French Market Homestead. We decline to extend Mennonite to require notice to former owners of delinquency of a loan secured by a conventional mortgage.
Defendants finally urge that the doctrine of equitable estoppel bars imposition of personal liability. Defendants contend that Mathis dissuaded them from making payments on the note by telling defendants that the house would be sold so that the Portillos would not be required to pay any sum in addition to the proceeds from the sale.[5]
There is no evidence that Dr. Howze would have continued to make the payments if the delinquency was cured. Further, the record indicates the Portillos were not willing to bring the note current without acquiring possession and/or ownership *1142 of the property.[6] French Market could not ensure that Dr. Howze would resume payments on the note, nor did the bank have the power to sell the property back to the Portillos in the absence of a foreclosure proceeding. In light of these circumstances, the defendants could not have changed their position in reliance on Mathis’ statements. Thus the doctrine of equitable es-toppel is inapplicable. See American Bank and Trust v. Trinity Universal Insurance Company, 251 La. 445, 205 So.2d 35 (1967).
We find that the trial court erred in absolving Mr. and Mrs. Portillo of their personal liability for the loan they obtained from French Market. The judgment is reversed.
REVERSED.

. The trial judge did not rely on any statute or jurisprudence and he states in his Reasons for Judgment:
"The problem I have is that the very first notice that Mr. Portillo got of any delinquency was a notice to collect the entire balance that was due on the account.
******
"There must be some obligation. I don’t have any cases in front of me. Its just pure equity. It seems to me there must be some obligation on their part to notify him that he is in serious trouble.”

. Defendants do not argue their liability was extinguished when Dr. Howze assumed the mortgage. Thus, the only basis upon which the defendants argue against liability for the loan they obtained is the failure of French Market Homestead to inform them the note was delinquent.

. In U.S. v. Whitney, 602 F.Supp. 722 (W.D.N.Y.1985), a veteran obtained a Veteran’s Administration (VA) guaranteed loan which contained a promise in favor of the bank to pay even after the property was sold to another party. The veteran sold the property and the subsequent owner defaulted. The VA paid on its guaranty, then sued the veteran for the deficiency. The court held:
In the absence of meaningful notice, [the veteran] is denied the opportunity to exercise his equity of redemption or to bid in on the proceeding disposing of the property. Since he clearly has a legally protected property interest in the outcome of the foreclosure, the mortgagor is constitutionally entitled to notice reasonably calculated to apprise him of his [sic] pendency.

. Notice of the foreclosure proceedings has afforded the defendants the opportunity to regain possession of the property in question by appearing at the sheriff’s sale to bid on the house.

. We note that, while the possible personal liability is for a sum of approximately $28,000.00, the mortgaged property will be sold and the proceeds credited against the debt.

. The testimony of both Mr. Portillo and French Market's counsel, Robert A. Mathis, indicates that Mr. Portillo was willing to pay the small amount of money necessary to bring the note current and continue to make the monthly payments only if he would thereby become the owner of the property. Mathis testified that he explained to defendant that the homestead was a mere mortgagee and was not authorized to transfer ownership of the property prior to foreclosure.