Roger **BOLEY**, individually and on behalf of all others in the State of North Carolina similarly situated, Plaintiff,

v.

Anthony J. **PRINCIPI**, or his successor, Acting Secretary of the Department of Veterans Affairs; and Kenneth McDonald, or his successor, Director, Winston–Salem Regional Office, The Department of Veterans Affairs, Defendants.

No. 92–16–CIV–5–BO.

United States District Court,
E.D. North Carolina,
Raleigh Division.

Nov. 10, 1992.

---

Philip A. Baddour, Jr., Chloe J. Wellons, Baddour, Parker & Hine, P.A., Goldsboro, N.C., for plaintiff.

Paul Newby, Asst. U.S. Atty., Raleigh, N.C., Ruth A. Harvey, Atty., Civil Div., Dept. of Justice, Washington, D.C., for defendants.

## ORDER

TERRENCE WILLIAM BOYLE, District Judge.

Plaintiff Roger Boley brought this action to recover payments he made to the Department of Veterans Affairs (VA) under an indemnity agreement signed as part of his application for a VA home loan. Boley also seeks to enjoin collection from other VA loan debtors in North Carolina under similar agreements where the VA has not complied with North Carolina antideficiency laws set out in N.C.Gen.Stat. §§ 45–21.6 and 45–21.7. Finally, he has asked the court to order the VA to return to members of the proposed class all funds collected without complying with those state statutory provisions. This matter is currently before the court on plaintiff's motion to certify a class and the parties' cross motions for summary judgment. A hearing on each of these motions was held on September 22, 1992, and they are now ripe for decision. For the reasons set out below, the plaintiff's motion to certify a class is denied, and defendant's motion for summary judgment is granted.

## FACTS

Plaintiff Roger Boley is an Air Force veteran who financed his purchase of a home in Wayne County, North Carolina with a VA-guaranteed home loan in 1983. The application for a loan guarantee he signed contained an indemnity agreement requiring him to repay any guaranty claim which the VA might be required to pay to the lender. In 1987, Boley sold the property to J. Faron Cooke, and Mr. Cooke assumed the loan. Mr. Boley subsequently moved to Michigan, where he currently resides.

In November of 1987, Mr. Cooke defaulted on the loan, and the lender filed a fore-closure action on May 9, 1988. A hearing on the foreclosure was held on June 8, 1988. On June 16, the VA mailed Boley a letter at the address of the subject property in Wayne County advising him that foreclosure appeared probable because of Mr. Cooke's delinquency. This letter was forwarded to Mr. Boley in Michigan. He received the letter on June 23 and contacted a VA representative by telephone the next day. During this conversation, he learned that a foreclosure sale was to be held on June 29, 1988.

The foreclosure sale was held as scheduled, and the lender, First Union Mortgage Corporation, purchased the property for $54,889.00, a price approved by the VA. The outstanding balance of Mr. Boley's loan exceeded the amount recovered as proceeds of the sale by $12,301.21, and the VA paid that amount under its guaranty agreement with the lender. The VA subsequently sought to recover $12,301.21 plus interest from Mr. Boley under the indemnity agreement contained in his loan application. Mr. Boley paid the sum demanded by the VA, but now seeks to recover his payment in the instant action. He argues this court should adopt a rule of decision compelling the VA to comply with North Carolina statutes requiring prior notice of foreclosure proceedings before seeking to collect from veterans under the indemnity provisions of guaranteed loan agreements. Plaintiff further contends that the VA's failure to provide such notice constitutes a deprivation of property without due process of law in violation of VA debtors' rights under the Fifth and Fourteenth Amendments to the United States Constitution.

## DISCUSSION

A. Plaintiff's Motion to Certify a Class.

Plaintiff Boley has moved that the court certify this case as a class action, with the plaintiff class composed of

All veterans or widows of veterans or other individuals eligible for home loan guarantees or insurance provided pursuant to Title 38, United States Code, Chapter 37, against whom a claim for a defi-

ciency judgment has been or will be made by the United States pursuant to 38 C.F.R. 36.4323(e) or pursuant to a written indemnity agreement, which claim paid by the United States to a lender who submitted such claim to the United States because of a foreclosure in North Carolina in which notice was not given in accordance with North Carolina General Statutes Sec. 45–21.16(b)(1) and (2) and North Carolina General Statutes [sic] Sec. 45–21.17.

■ In determining whether class certification is proper under Rule 23, Fed.R.Civ. P., a court must first determine whether the three prerequisites of Rule 23(a) are met. Under this rule, the class is proper if (1) the class is so numerous that joinder of all members is impracticable, (2) claims of the class members share common questions of law or fact, (3) claims of the representative parties are typical of the claims of the class, and (4) the named plaintiffs will fairly and adequately protect the interests of the class. Rule 23(a), Fed.R.Civ.P.

■ Applying these rules to the case at bar, the court finds that the typicality and adequate representation requirements are not met. Because of the way the class is defined, all class members' claims would necessarily share the legal question of whether the provisions of the North Carolina antideficiency statute should apply to VA indemnity contract. The factual basis for determining whether the statutory requirements have been met will be different for each loan debtor, however. Additionally, with respect to plaintiff's due process claim, it would be necessary for the court to separately determine whether the notice given to each class member complied with due process requirements. Finally, should plaintiff prevail, awards of damages to each proposed class member from whom a deficiency has been collected would require individualized proof of both the amount collected from each debtor and any interest accrued.

These factual differences in the claims of potential class members make it difficult for plaintiff to show that his claim is "typical" of the claims of class members, or that

he can fairly and adequately represent the interests of all class members. The sufficiency of notice under due process standards is necessarily a fact-bound inquiry, *United States v. Murdock*, 627 F.Supp. 272, 276 (1985) and the broad variation possible in the notice received by debtors makes it difficult for any one plaintiff to either be typical of them all or to adequately represent each possibility. Boley received a letter after the foreclosure hearing, and discussed the matter with VA officials by telephone before the foreclosure sale. Where the method and timing of notice is an issue in each case, his interests in arguing what is constitutionally permissible might well diverge from some other debtor who received notice in some different fashion. The court therefore cannot conclude that plaintiff has satisfied the requisites of typicality and adequate representation under Rule 23(a).

Accordingly, based upon this court's findings that plaintiff Boley has not satisfied the requirements of Rule 23 for class certification, the motion to certify a class is hereby DENIED.

**B. Plaintiff's and Defendants' Cross Motions for Summary Judgment.**

Both parties in this action have moved for summary judgment. The operative facts are undisputed, as set out above, so there is no material issue of fact to be decided. The only issue in the case is the legal sufficiency of the notice received by Mr. Boley. Since resolution of this issue will entitle either plaintiff or defendant to judgment as a matter of law, making summary judgment appropriate, the court now turns to the legal arguments supporting each party's motion.

*1. The Application of State Law.*

■ Plaintiff Boley argues first that the VA should have to return the funds collected from him under the indemnity agreement because the lender failed to follow the procedure set out in N.C.Gen.Stat. §§ 45–21.16 and 45–21.17, when it foreclosed on the property. Under these statutes, a mortgagee or trustee exercising a power

of sale under a mortgage or deed of trust must give notice of hearing to anyone against whom the noteholder intends to try to collect at least ten days prior to the hearing. N.C.Gen.Stat. § 45–21.16(a), (b). Failure to give such notice cuts off the holder's ability to collect a deficiency against the party not notified. N.C.Gen. Stat. § 45–21.16(b)(2). Additionally, the "mortgagee, trustee, or other person authorized to conduct the sale" must mail notice of the sale to those against whom liability will be asserted at least twenty days prior to the sale. N.C.Gen.Stat. § 45–21.17.

This statutory scheme applies directly to the VA when it exercises its subrogation rights under state law to recover amounts paid to cover deficiencies after defaults on VA guaranteed loans. Under a subrogation theory, the VA's rights are the same as those of the lender who foreclosed, and thus are governed by state foreclosure law such as the North Carolina antideficiency statute. The VA therefore concedes that its right to subrogation against Mr. Boley was lost when First Union failed to comply with the statutory notice requirements.

In addition to this subrogation right, however, the VA has a separate indemnity right arising out of its guaranty contract with the debtor veteran. *United States v. Shimer*, 367 U.S. 374, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961). Since this right is derived not from the state-law rights of the lender, but from a contract formed in the administration of a nationwide federal program, federal law governs. *See United States v. Vallejo*, 660 F.Supp. 535, 537 (W.D.Wash.1987).

Mr. Boley's argument is therefore not that the VA is required as a matter of state law to comply with the North Carolina antideficiency statute in exercising its indemnity rights, but that federal law does not require adequate notice in this context and that therefore the North Carolina statute should be adopted by this court as a rule of decision under federal common law. Such adoption is proper, plaintiff argues, under the Supreme Court's decision in *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979) which held that state law can be adopted as federal common law where the application of state law would not frustrate the specific objectives of the federal program. *Id.*, at 728, 99 S.Ct. at 1458.

As support for his position the plaintiff relies most heavily on the Ninth Circuit's decision in *Whitehead v. Derwinski*, 904 F.2d 1362 (9th Cir.1990). The plaintiffs in *Whitehead* challenged the VA's collection of deficiencies after a nonjudicial foreclosure proceeding where Washington state law barred deficiency judgments for private lenders unless a formal judicial foreclosure was held. The district court granted summary judgment for the plaintiffs, denying the VA's separate right to indemnity. On appeal, the Ninth Circuit recognized the VA's indemnification right as an independent one, but held that it was a "secondary" right applicable only where state law completely barred deficiency judgments and therefore cut off the right to recover under a subrogation theory. Where, as in Washington, there was a method (judicial foreclosure) by which the VA could recover deficiencies under state law, that method had to be followed, and indemnification was not available.

In response, the government argues that the VA, the Supreme Court and other federal courts have all recognized the indemnification right to be completely independent of the subrogation remedy. The Supreme Court's holding in *United States v. Shimer*, 367 U.S. 374, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1960), clearly established that the VA's indemnity right is not extinguished by the holder's failure to protect its right to collect a deficiency under state law. In light of *Shimer*, the VA contends, the *Whitehead* court's holding that the subrogation right is somehow primary is without support. *See United States v. Davis*, 961 F.2d 603, 609 (7th Cir.1992) ("We discern no fair support for characterizing the VA's subrogation right as 'primary' and thus respectfully decline to follow our Ninth Circuit colleagues."); *Vail v. Derwinski*, 946 F.2d 589, 593 (8th Cir.1991) ("The *Whitehead* court provided no support for its con-

clusion that the VA's indemnity right was essentially a backup for subrogation."). This court agrees with the Seventh and Eighth Circuits that the *Whitehead* court's reasoning is not persuasive.

 Moreover, even if the court were inclined to adopt state law as a rule of decision governing the VA's indemnity contracts, adoption is only proper if the statute to be adopted clearly applies. The court is not convinced that either the letter or the spirit of the North Carolina antideficiency statutes would govern the indemnity contract between the VA and Boley if both were private parties. The statutory provisions require that notice be given by "mortgagees and trustees ... under a mortgage or deed of trust" and by "the mortgagee, trustee or other person authorized to conduct the sale" to "any person obligated to repay the indebtedness against whom the holder thereof intends to assert liability." N.C.Gen.Stat. §§ 45–21.16, 45–21.17. By its terms, this statute governs only the relationship between mortgagors and mortgagees, and is designed to protect interests in the property to be sold. Contract rights such as those in guaranty agreements do not fall within the statute's coverage. Private third party guarantors of loans are not required by the statute to give notice to those whose obligations they guarantee before seeking indemnity from them. Any notice requirement in such a situation is imposed by the contract between the parties, not by the antideficiency statute.

Based on this analysis, the court declines to adopt North Carolina law as a rule of decision governing the notice required before the VA may exercise its indemnity rights. Adoption of state law as a rule of decision is permitted where the adopted statute does not frustrate federal objectives, but only if the statute addresses the concerns confronted by the federal court. Where a federal statutory and regulatory scheme injects a federal presence into an essentially private transaction, adoption of state law is not appropriate unless the statute applies to private parties in the same position as the government. The North Carolina statutes plaintiff invites the court to adopt simply do not apply to the situation at bar. *See Vail,* 946 F.2d at 592 (holding Michigan's antideficiency statute inapplicable to VA indemnity agreement.)

## 2. *Due Process of Law.*

The determination that the North Carolina statute is inapplicable does not, however, dispose of plaintiff's argument that due process requires the VA to give some notice of pending foreclosure proceedings before exercising its indemnity rights. As one court confronting a similar claim noted, the indemnity agreement

> imposes a heavy obligation on the veteran, one that weighs even heavier when the veteran allows a purchaser to assume the VA loan and does not obtain a release from the VA. The veteran then cannot ensure that the new owner will comply with the mortgage covenants, yet the veteran is still liable for the new owner's default. This unenviable situation is exacerbated when the veteran receives no notice of foreclosure and cannot ensure that fair value is received, nor can the veteran redeem if he is unaware of the sale.
>
> Although perhaps this scheme is enforceable as between private parties, government participation in this type of foreclosure procedure raises serious due process questions.

*Vail v. Derwinski,* 946 F.2d 589 (8th Cir. 1991). *See also United States v. Whitney,* 602 F.Supp. 722, 735 (W.D.N.Y.1985); *United States v. Murdock,* 627 F.Supp. 272 (N.D.Ind.1985).[1]

The due process clause of the fourteenth amendment requires states, prior to taking action which will affect a constitutionally protected interest in life, liberty or property, to provide "notice reasonably calculat-

---

**1.** In the Veteran's Benefits Amendments Act of 1989, Congress changed the VA loan program. In exchange for an increase in the loan fee paid by the veteran at closing, the veteran is released from any liability for deficiencies after fore-closure of VA-guaranteed loans. The "heavy burden" of the indemnity agreement was thus lifted from veterans applying for loans after 1990.

ed, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 798, 103 S.Ct. 2706, 2711, 77 L.Ed.2d 180 (1983). The same standard applies equally to the actions of federal agencies under the fifth amendment. *See, e.g., Adams v. Harris,* 643 F.2d 995, 998 (4th Cir.1981). Therefore if the court finds that VA actions affect a veteran's property interests, the notice requirements of *Mullane* and *Mennonite* will apply.

■ In the indemnity agreement between a veteran and the VA, the veteran promises to reimburse the VA if it pays off under its guaranty agreement with a lender. Under this contractual relationship, an action by the VA—payment to the lender—results in a debt owed by the veteran to the United States. The veteran's interest in being free from this debt is a property interest, which he must be given an opportunity to protect at a time when meaningful protection is possible. It is therefore necessary to examine the procedure for foreclosure on a VA loan to determine at what stage notice is necessary to comport with due process.

If the assumer of a VA loan defaults on loan payments, the holder of the note is required to notify the VA. 38 C.F.R. § 36.-4315. The holder then has the option to submit a claim to the VA under the guaranty agreement (in which case the VA becomes subrogated to the holder's rights to the extent of the guaranty), 38 C.F.R. § 36.4316, or to institute foreclosure proceedings. Notice of intent to foreclose must be given to the VA at least 30 days before initiation of foreclosure proceedings. 38 C.F.R. 36.4317. The VA must set a net value of the property, and if the proceeds of the foreclosure sale are less than the value set by the VA, the guaranty will not cover the difference. 38 C.F.R. § 36.4320. In effect, this gives the VA the power to set the minimum price which the holder will accept in the foreclosure sale.

■ Of these events, the first to impact the rights of a veteran who has assigned the note is the foreclosure sale itself. The decision to foreclose on the property affects only interests in the mortgaged real property, not property interests in collateral indemnification contracts. Therefore notice of the foreclosure hearing required by *Turner v. Blackburn,* 389 F.Supp. 1250 (W.D.N.C.1975) need only be given to those with interests in the property to be sold. The assigning veteran no longer has any interest in the real estate itself; his rights were assigned away when he sold the property.

The veteran does have an interest, however, in assuring that the lender gets a fair price for the property at the foreclosure sale. The amount of proceeds collected at the sale directly affects the amount of his debt for any deficiency. In order to properly protect this interest, the veteran must be given prior notice of the sale so that he can challenge either the VA's net value determination or the actual price accepted by the mortgagee or trustee when the property is sold. The court therefore holds that the VA must give a potential indemnitor pre-sale notice by mail where the VA knows or can obtain knowledge of the address of that veteran. *See Murdock,* 627 F.Supp. at 276.

Applying this standard to the case at bar, the court finds that Mr. Boley was afforded notice sufficient to comport with due process. It is undisputed that the VA sent to him, and that he actually received, a mailed notice prior to the sale. The contents of that notice may not have been sufficient to inform Mr. Boley that the foreclosure sale was imminent, but he admits that he learned of the sale date the next day during a telephone conversation prompted by the letter.[2] This notice was sufficient to permit Mr. Boley to monitor the actions of

---

**2.** This is in sharp contrast to the complete lack of actual notice given the veteran in the *Whitney* case.

the VA and the lender at the foreclosure sale, and therefore to adequately protect his interests.[3]

Based upon the court's holdings that the notice given to Mr. Boley was sufficient under the due process clause of the fifth amendment and that North Carolina antideficiency statutes should not be applied, the defendants are entitled to judgment as a matter of law. Accordingly, defendants' motion for summary judgment is hereby GRANTED, and plaintiff's cross motion for summary judgment in his favor is hereby DENIED.

SO ORDERED.

---

3. Moreover, the VA loan guaranty statute provides two avenues for escaping liability under the indemnity agreement. Upon sale of the property to a creditworthy buyer, an assigning veteran may apply for a release from liability under 38 U.S.C. § 3714(a). Additionally, after the sale, the veteran may seek a waiver of indebtedness from the VA under 38 U.S.C. § 5302(b). Mr. Boley took advantage of neither of these provisions.